**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FILED

NOV 1 9 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| BEST ENTERPRISES, LLC, a<br>Minnesota limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED WATCH TECHNOLOGIES,<br>LLC., an Illinois limited liability<br>company, and ERIC HINES,<br>an individual,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

**07CV6547
JUDGE KENNELLY
MAG.JUDGE DENLOW**

## COMPLAINT

Plaintiff, Best Enterprises, LLC ("Best Enterprises"), by its attorneys, Freeborn & Peters LLP, as for its complaint against Defendants, Applied Watch Technologies, LLC ("Applied Watch") and Eric Hines ("Hines"), alleges as follows:

### Nature of the Case

1.     Best Enterprises brings this suit seeking redress for the substantial monetary and other injuries suffered as a result of the unlawful behavior of Applied Watch and Hines, its former CEO, Chairman and President. Best Enterprises entered into a written agreement with Applied Watch, pursuant to which Best Enterprises became the exclusive reseller of all of Applied Watch Products in the continental United States and Hawaii. Applied Watch failed to honor the terms of the agreement, which caused Best Enterprises substantial monetary damages. In addition, Hines and Applied Watch tortiously interfered with Best Enterprises' business relationship with Phil Lach, an important sales representative for Best Enterprises, and other prospective customers of Best Enterprises. Because of Hines and Applied Watch's tortious

interference with the business relationship and expectancy, Best Enterprises lost the services of Phil Lach and suffered other substantial damages.

### Parties and Others

2.    Plaintiff, Best Enterprises, is a Minnesota limited liability company with its principal place of business located at 6989 N. 55th Street, Suite D, Oakdale, Minnesota 55128.

3.    Defendant Applied Watch is an Illinois limited liability company with its principal place of business located at 1095 Pingree Road, Suite 213, Crystal Lake. Illinois. Applied Watch is in the business of, *inter alia*, offering management platforms for open source computer security applications.

4.    Defendant Hines was at all time pertinent hereto the CEO, Chairman and President of Applied Watch.  On information and belief, Hines is a resident of the State of Illinois.

5.    Phil Lach was a sales representative for Best Enterprises.

### Jurisdiction And Venue

6.    There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Accordingly, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a).

7.    Venue in this district is appropriate pursuant to 28 U.S.C. §1391(a).

### Allegations Common To All Counts

**A.    Best Enterprises and Applied Watch Enter Into the Reseller Agreement.**

8.    Best Enterprises is a family owned, Service-Disabled Veteran Owned Small Business.  For over sixteen years, Best Enterprises has provided communications contractors in the commercial and government sector with all the materials and technical help required to select

2

and install data, voice, telecom and security systems. As part of its business, Best Enterprises acts as a distributor, offering a broad line of many of the leading manufacturers' highest quality products.

9.    On or about May 1, 2006, Best Enterprises and Applied Watch entered into a Reseller Agreement ("Reseller Agreement").  Applied Watch, *inter alia,* offers management platforms for open source computer security applications.   (A true and correct copy of the Reseller Agreement is attached hereto as Exhibit "A" and incorporated herein.)

10.    The Reseller Agreement, which was solely drafted by Applied Watch, granted Best Enterprises the exclusive right within the continental United States and Hawaii to resell the Applied Watch Command Center™.  (Ex A, p. 1, ¶ 1.1; p. 10-11.)   The Applied Watch Command Center™ is a management platform for open source security applications.   Best Enterprises also had the right to sell all other Applied Watch Products on a non-exclusive basis. (Ex. A, p.11.)

11.    The original term of the Reseller Agreement was for one year, commencing on May 1, 2006.

12.    Pursuant to Section 5.1 of the Reseller Agreement, Best Enterprises and Applied Watch agreed that Best Enterprises was entitled to the following gross profit margins on all Applied Watch products: equipment – 40%; software – 45%; TAPS[1] – 20%; installation – 100%; and annual subscriptions – 25%.

**B.    The First Amendment to the Reseller Agreement.**

13.    In or around October of 2006, Applied Watch desired to extend the term of the Reseller Agreement.  Furthermore, Applied Watch also desired to amend the Reseller Agreement

---

[1] TAP stands for "Total Access Port," which is a device that allows a computer system to interface with the Applied Watch software.

to make Best Enterprises the exclusive reseller of all Applied Watch products, not just the Applied Watch Command Center™.

14.    By e-mail dated October 24, 2006, Hines confirmed that he wanted Best Enterprises to be the exclusive reseller of all Applied Watch products. (A true and correct copy of the October 24, 2006 e-mail is attached as Exhibit "B" and incorporated herein.)

15.    In that e-mail, Hines stated his intention to have Best Enterprises "take[] over all of [Applied Watch's] sales efforts." *Id.* This would allow Applied Watch "to focus on what [it] does best, which is [its] technology." *Id.*

16.    In order to effectuate this, on or about November 1, 2006, Best Enterprises and Applied Watch entered into the First Amendment to the Reseller Agreement ("First Amendment"). (A true and correct copy of the First Amendment is attached hereto as Exhibit "C" and incorporated herein.)

17.    The First Amendment extended the term of the Reseller Agreement through December 31, 2007. (Ex. C, ¶ 2.)

18.    Furthermore, the First Amendment provided that Best Enterprises "is appointed as an exclusive, independent Reseller of Applied Watch Products" in the continental United States and Hawaii. (Ex. C., ¶ 3.)

19.    As part of this exclusive relationship, Best Enterprises was "responsible for all sales and marketing related activities for Applied Watch Products in [the continental United States and Hawaii], including but not limited to:

- Pursuing all sales leads. Applied Watch agrees that it shall cause all sales leads to be forwarded to Best in order that Best may pursue such leads.

- Any pricing inquiries will be forwarded to Best for follow up.

- All quotes (whether from Best or from Applied Watch in the event of a quote to a preexisting customer) will be presented to customers on Best letterhead or through other appropriate Best channels (e.g. e-mail).

- All customer orders will be placed with Best. Best will then deliver a purchase order to Applied Watch in accordance with the Agreement, as amended.

- In the event an order is placed directly with Applied Watch, such orders shall be forwarded to Best for processing in accordance with the Agreement, as amended."

(Ex. C, p. 3.)

20.    The First Amendment also provides that "the parties agree that the pricing and margins for the Applied Watch Products and the installation work performed in accordance with Paragraph 4 of this First Amendment shall be as set forth on **Exhibit B** attached to this First Amendment."  (Ex. C, ¶ 4.)

21.    Exhibit B to the First Amendment defines "gross profit margin" as "the value received by Best from customers purchasing Applied Watch Products which exceeds the cost of Applied Watch Products paid by Best to Applied Watch."  (Ex. C, p. 4.)  Under the terms of the First Amendment, Best Enterprises was entitled to the same gross profit margins as under the original Reseller Agreement: equipment – 40%; software – 45%; taps – 20%; installation – 100%; and annual subscriptions – 25%.

22.    The only narrow exception to Best Enterprises' exclusive right to sell Applied Watch Products was for customer relationships that existed between Applied Watch and a customer as of the November 1, 2006 date of the First Amendment.  (Ex. C, p. 3.)  A full and complete list of these existing relationships is attached as Exhibit B to the First Amendment. Best Enterprises was not entitled to any gross profit margin with respect to the existing relationships specified in Exhibit B to the First Amendment.

**C.    Applied Watch's Breach of the Reseller Agreement and First Amendment.**

23.    After the execution of the Reseller Agreement, Best Enterprises worked diligently and in a good faith effort to generate sales of Applied Watch's products. Best Enterprises expended large amounts of money and resources in its efforts on behalf of Applied Watch, which entailed spending large amounts of time on the telephone and traveling in person to industry conventions to meet prospective customers of Applied Watch products.

24.    From the very date of the Reseller Agreement, however, Applied Watch made no effort to honor the terms of the parties' contract. Throughout the parties' relationship, Applied Watch failed to make payments that were owing to Best Enterprises, failed to cause all sales leads to be forwarded to Best Enterprises to pursue, placed customer orders itself instead of through Best Enterprises, and failed to forward to Best for processing orders that were placed directly with Applied Watch. All of these actions were in breach of the parties' agreement.

25.    In addition, on or about March 27, 2007, Hines unilaterally declared that Best would no longer be the exclusive reseller of all Applied Watch products in the continental United States and Hawaii. Instead, Hines informed Best that he was "narrowing [Bests'] exclusivity to the Midwest region." (A true and correct copy of the March 27, 2007 e-mail from Hines to Best is attached as Exhibit "D" and incorporated herein.) Hines' unilateral action was a breach of the parties' contract.

26.    Moreover, Buck Bundhund ("Bundhund"), an Applied Watch employee, sent an e-mail to Best on May 11, 2007. (A true and correct copy of the May 11, 2007 e-mail from Bundhund to Best is attached as Exhibit "E" and incorporated herein.) In that e-mail, Bundhund referenced six sales opportunities, only one of which was included on the list of existing customer relationships for which Best Enterprises was not entitled to any gross profit margin. *Id.*

Despite this, Bundhund informed Best Enterprises that Applied Watch was not going to honor the commission percentages called for by the Reseller Agreement and First Amendment. *Id.* Instead of the commission percentages required by the parties contract, Applied Watch was, in some instances, going to reduce the commission to as low as only 10%. *Id.* To date, Applied Watch has not paid Best Enterprises any commissions for these sales, whether the full amount called for by the parties' agreement, or the lower amount contained in the May 11, 2007 e-mail.

27.     Furthermore, the May 11, 2007 e-mail also makes clear that Applied Watch breached the Reseller Agreement and First Amendment by not forwarding on to Best all sales leads. For example, Bundhund states that Best Enterprises should only get a 10% commission on the deal with Dillards because it is "a Applied Watch generated deal." *Id.* However, Dillards is not included on the list of Applied Watch's existing customer relationships, and should therefore have been forwarded on to Best Enterprises pursuant to the parties' agreement. (*See* Ex. C, p. 3.)

28.     On information and belief, Applied Watch failed to forward to Best Enterprises numerous other sales leads as required by the contract. Applied Watch purposely did not forward on these leads in order to avoid paying Best Enterprises the commissions that were due under the parties' agreement. By purposely not forwarding on these sales leads, Applied Watch acted in a willful and malicious manner.

## B.     Hines' Tortious Interference With Best Enterprises' Business Relationship With Lach and Other Business Expectancies.

29.     In April of 2005, Best Enterprises entered into a business relationship with Phil Lach ("Lach") pursuant to which Lach became a sales representative for Best Enterprises and was paid a percentage of the sales opportunities he consummated.

30.    After the Reseller Agreement was executed, Lach became Best Enterprises' primary sales representative in the promotion and sale of Applied Watch products. On or about November 1, 2006, Lach and Best Enterprises agreed that Lach's work for Best Enterprises would from that point forward focus exclusively on the promotion and sale of Applied Watch products.

31.    In November of 2006, Hines, without the knowledge and/or approval of Best Enterprises, approached Lach and suggested to Lach that he should work directly with Applied Watch instead of with Best Enterprises. Hines made this proposal in order to wrongly eliminate Best Enterprises from the transactions, and to thereby avoid having to pay Best Enterprises the amounts due under the parties' agreement.

32.    On March 27, 2007, Hines, believing that Lach would from that point forward be working for Applied Watch, sent an e-mail to Best Enterprises. In that e-mail, Hines used the fact that Lach would purportedly no longer be working for Best Enterprises as a reason for unilaterally attempting to change the terms of the still valid Reseller Agreement and First Amendment. (See Ex. D.)

33.    After Hines made duplicitous and misleading statements to Lach, the two had a falling out and Lach decided not to work for Hines. As a result, Hines refused to allow Lach to work any longer for Best Enterprises in the promotion and sale of Applied Watch products.

34.    Because of Hines' and Applied Watch's unjustified and intentional interference with Best Enterprises' business relationship with Lach, and their intentional interference with Best Enterprises' business expectancies under the parties' agreement, Best Enterprises has suffered substantial monetary damages and lost business opportunities.

8

35.     On or about July 13, 2007, Applied Watch terminated the Reseller Agreement and First Amendment, pursuant to Section 10.1 of the Reseller Agreement.

## CLAIMS

### COUNT I
### (Breach of Contract Against Applied Watch)

36.     Best Enterprises realleges and incorporates by reference herein Paragraphs 1 through 35 of the Complaint as Paragraph 36 of Count I of the Complaint as though fully set forth herein.

37.     The parties, for good and valuable consideration, entered into a binding contract, specifically, the Reseller Agreement, as subsequently modified by the First Amendment.

38.     The Reseller Agreement clearly and unambiguously granted Best Enterprises the exclusive right within the continental United States and Hawaii to resell the Applied Watch Command Center™. Best Enterprises also had the right to sell all other Applied Watch Products on a non- exclusive basis.

39.     The First Amendment clearly and unambiguously expanded the scope of the Reseller Agreement by making Best Enterprises the exclusive seller of *all* Applied Watch products in the continental United States and Hawaii.

40.     Applied Watch breached the parties agreement by, *inter alia*: failing to make payments that were owing to Best Enterprises; failing to cause all sales leads to be forwarded to Best Enterprises to pursue; placing customer orders itself instead of through Best Enterprises; failing to forward to Best Enterprises for processing orders that were placed directly with Applied Watch; and failing to make Best Enterprises responsible for the installation of all Applied Watch products.

41.     Best Enterprises has performed or was at all times willing to perform all of its duties under the parties' agreement.

42.     Best Enterprises has been damaged in an amount in excess of $250,000.00, the benefit of its bargain, as a direct and proximate result of the Applied Watch's breaches of the parties' agreement.

WHEREFORE, Plaintiff, Best Enterprises, LLC, prays that this Court enter judgment in its favor and against Defendant, Applied Watch Technologies, LLC, for compensatory damages in an amount in excess of $250,000.00, plus prejudgment interest, costs and such other and further relief as this Court deems just and appropriate under the circumstances.

## COUNT II
### (Tortious Interference With Business Relationship – Against Hines and Applied Watch)

43.     Best Enterprises realleges and incorporates by reference herein Paragraphs 1 through 42 of the Complaint as Paragraph 43 of Count II as though fully set forth herein.

44.     Hines and Applied Watch intentionally interfered with Best Enterprises business relationship with Lach by attempting to solicit Lach away from Best Enterprises. Hines' and Applied Watch's improper purpose was to avoid the contractual obligations to Best Enterprises and to force Best Enterprises into modifying the Reseller Agreement, as modified by the First Amendment.

45.     As a direct and proximate result of Hines' and Applied Watch's intentional interference, Best Enterprises did not realize its expectations from its business relationship with Lach, and has been damaged in an amount to be proven at trial.

46.     The conduct of Hines and Applied Watch was willful or malicious. Thus, Best Enterprises is also entitled to an award of punitive damages against these Defendants.

10

WHEREFORE, Plaintiff, Best Enterprises, LLC, prays that this Court enter judgment in its favor and against Defendants, Applied Watch Technologies, LLC and Eric Hines, for compensatory damages in an amount in excess of $250,000.00, plus prejudgment interest, punitive damages in excess of $1,000,000.00, costs and such other and further relief as this Court deems just and appropriate under the circumstances.

**COUNT III**
**(Tortious Interference With Prospective Business**
**Relationships – Against Hines and Applied Watch)**

47.     Best Enterprises realleges and incorporates by reference herein Paragraphs 1 through 46 of the Complaint as Paragraphs 47 of Count III as though fully set forth herein.

48.     Hines and Applied Watch intentionally interfered with Best Enterprises prospective business relationships with customers pursuant to the terms of the parties' agreement. Hines and Applied Watch's improper purpose was to avoid the contractual obligations to Best Enterprises and to force Best Enterprises into modifying the Reseller Agreement, as modified by the First Amendment.

49.     As a direct and proximate result of Hines' and Applied Watch's intentional interference, Best Enterprises did not realize its expectations from its business relationships with Lach and Applied Watch, and has been damaged in an amount to be proven at trial.

50.     The conduct of Hines and Applied Watch was willful and malicious. Thus, Best Enterprises is also entitled to an award of punitive damages against these Defendants.

WHEREFORE, Plaintiff, Best Enterprises, LLC, prays that this Court enter judgment in its favor and against Defendants, Applied Watch Technologies, LLC and Eric Hines, for compensatory damages in an amount in excess of $250,000.00, plus prejudgment interest,

punitive damages in excess of $1,000,000.00, costs and such other and further relief as this Court deems just and appropriate under the circumstances.

## COUNT IV
### (Unjust Enrichment – Against Applied Watch)

51.    Best Enterprises realleges and incorporates by reference herein Paragraphs 1 through 35 of the Complaint as Paragraph 41 of Count IV as though fully set forth herein.

52.    In the alternative, Best Enterprises conferred a benefit on Applied Watch that it would be inequitable for Applied Watch to retain.

53.    Best Enterprises expended significant resources, manpower and money in promoting the sale of Applied Watch's products. Applied Watch has received and will continue to receive the benefit of Best Enterprises' efforts through product sales that have been made, or will in the future come to fruition.

54.    Applied Watch terminated its agreement with Best Enterprises in order to retain the benefit of Best Enterprises' efforts without having to pay any recompense to Best Enterprises.

55.    Because of this, it would be inequitable for Applied Watch voluntarily to accept and retain these benefits without payment

WHEREFORE, Plaintiff, Best Enterprises, LLC, prays that this Court enter judgment in its favor and against Defendant, Applied Watch Technologies, LLC, for compensatory damages in an amount in excess of $250,000.00, plus prejudgment interest, costs and such other and further relief as this Court deems just and appropriate under the circumstances.

### Jury Demanded

Plaintiff, Best Enterprises, LLC, demands a trial by jury on all issues triable by a jury under Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

BEST ENTERPRISES, LLC

By: _____
        One of Their Attorneys

Anthony J. Carballo
Garry L. Wills
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel.: 312/360-6000
Fax: 312/360-6596

Dated: November 19, 2007

#1387762v4

# EXHIBIT A

Applied Watch Technologies, LLC .¡ 1095 Pingree Road .¡ Suite 213 .¡ Crystal Lake, IL 60014 .¡ Tel: (877) 262-7593 .¡ Fax: (877) 262-7593

## RESELLER AGREEMENT

This Reseller Agreement ("**Agreement**") is made this _/_ day of _May_ , 2006 ("**Effective Date**"), by and between Applied Watch Technologies, LLC, an Illinois limited liability company with offices at 1095 Pingree Road, Suite 213, Crystal Lake, IL 60014 ("**Applied Watch**"), and Best Enterprises, LLC, a Minnesota LLC with offices at 6989 N. 55th Street, Suite D, Oakdale, MN 55128 ("**Reseller**").

## SECTION I: APPOINTMENT

1.1   **APPOINTMENT.** Applied Watch appoints Reseller and Reseller accepts appointment as an independent, exclusive Reseller to market, sell, lease and install Applied Watch products within the territory described in **Exhibit A** ("Territory").

1.2   **PRODUCTS COVERED.** Applied Watch products ("Applied Watch Products") means the products agreed to between the parties on the effective date of this Agreement, and described in **Exhibit B**, as the same may be changed and agreed to from time to time by the parties. Upon such agreement, the parties will each execute a revised **Exhibit B.**

1.3   **SUB-RESELLERS.** Reseller shall be liable for the acts and omissions of all Sub-resellers it appoints.

1.4   **SALES OUTSIDE TERRITORY.** Reseller shall in no way market, distribute, export, sell, lease or install Applied Watch Products outside the Territory without Applied Watch's prior written approval, which approval shall not be unreasonably withheld. Applied Watch will not provide any shipping with respect to any Purchase Orders ("P.O.s") issued by Reseller outside the Territory unless such P.O.s have been previously approved.

## SECTION II: OBLIGATIONS OF RESELLER

2.1   **MARKETING AND PRODUCT SUPPORT.** Reseller shall use reasonable efforts to market and sell Applied Watch Products in the Territory and shall comply with all reasonable policies, programs, and requirements regarding marketing and product support as may be communicated by Applied Watch to Reseller from time to time. Reseller shall not, without prior written authorization from Applied Watch, resell Applied Watch Products in a retail environment that includes any type of store, shop, or other similar physical premises into which customers or potential customers are invited for the purpose of purchasing or potentially purchasing any product from Reseller.

2.2   **ADVERTISING.** Reseller shall adhere to such advertising policies and programs as are communicated to Reseller by Applied Watch, provided such policies and programs have been mutually agreed upon in the event that such policies and programs result in an economic cost to Reseller.

2.3   **RESELLER SHALL:**

   a.   Supply Applied Watch with such data as Applied Watch requests regarding Reseller's sales to customers for Applied Watch's own reporting purposes;

   b.   Participate fully in Applied Watch campaigns to notify customers of any retrofit or recall of Applied Watch Products;

   c.   Use only Applied Watch-approved spare parts for any repair, servicing and maintenance

of Applied Watch Products it provides under warranty;

d.  Comply with laws and regulations applicable to "used" or returned merchandise and never refurbish, place in inventory, or resell as "new" any Applied Watch Products returned to Reseller for post-sale repair; and

e.  Instruct its customers on how to obtain replacement parts under warranty, including the use of Applied Watch's Return Merchandise Authorization ("RMA") procedures.

**2.4  OBSERVANCE OF APPLIED WATCH POLICIES.** Applied Watch will keep Reseller informed of Applied Watch's customer support policies and procedures, and Reseller agrees to follow such policies and procedures to resolve any customer support issues.

**2.5  RESELLER'S WAREHOUSE.** All Products shipped to Reseller shall be maintained in a Reseller facility and shall be insured against any damage or loss.

**2.6  PERSONAL GUARANTY.** Thomas Best, the President of Reseller, has agreed to a limited personal guaranty of payment obligations of Reseller under this Agreement, attached hereto as **Exhibit C.** Such guaranty shall be limited to amounts owed to Applied Watch under this Agreement for Applied Watch Products.

## SECTION III: OBLIGATIONS OF APPLIED WATCH

**3.1  SUPPLY OF APPLIED WATCH PRODUCTS.** Applied Watch shall endeavor to manufacture, assemble and ship Applied Watch Products to Reseller in a timely manner. Should shortages occur, Applied Watch may allocate its production as it deems appropriate, may delay or stop shipments, and may send partial shipments with prior notice.

**3.2  MARKETING ASSISTANCE.** Applied Watch will provide marketing support services and training programs to Reseller on a case-by-case basis for a pre-arranged fee.

## SECTION IV: ORDERING AND DELIVERY OF APPLIED WATCH PRODUCTS

**4.1  PURCHASING.** This Agreement with its terms and conditions, and those provided under the Applied Watch Consumer Products Limited Warranty (available upon request) applies to all P.O.s and other documents of purchase ("Orders") which Reseller may place with Applied Watch for Applied Watch Products during the term of this Agreement.

**4.2  ORDERS.**

a.  Reseller may deliver a signed P.O. to Applied Watch by facsimile, mail or electronic mail. Applied Watch shall accept all P.O.s by (a) facsimile, mail or electronic mail, with a signed original notice of acknowledgment or (b) by commencement of performance by Applied Watch.

b.  Each P.O. shall be deemed an offer by Reseller to purchase the Applied Watch Products listed therein and when accepted by Applied Watch shall constitute a contract in accordance with the terms and conditions of the P.O. and this Agreement. If a conflict arises between the two, this Agreement shall take precedence.

c.  P.O.s submitted by Reseller pursuant to this Agreement shall include the quantity and type of Product(s) ordered, Applied Watch Product descriptions, Applied Watch Product specifications, shipment and invoice information and shipping instructions, Reseller's order number and the Agreement number.


d.   Applied Watch shall not be obligated to accept any order from Reseller in an amount less than One Thousand United States dollars (US $1000.00).

**4.3   CHANGES TO ORDERS.**

a.   No terms of any P.O.s (whether printed, stamped, typed, written, or sent by any electronic means), except those specifying the quantity and type of Applied Watch Product(s) ordered, shipment and invoice information and shipping instructions (if allowed by Applied Watch), shall be binding either on Applied Watch or Reseller if they contravene any term or condition of this Agreement, unless specifically accepted or approved in writing and signed by an appropriate senior manager or executive of Reseller and Applied Watch. A general or form acknowledgment of any such order or any communication with respect to such an order, or the making of deliveries with respect thereto, shall in no case be construed as an acceptance or approval of the type required by this paragraph.

b.   Changes to Orders will only be accepted prior to the Order entering Applied Watch's manufacturing queue. Reseller may initiate such changes or additions to previously accepted Orders by submitting a modification of the Order to Applied Watch with appropriate reference to the original Order. Upon Applied Watch's written acceptance of the modification or addition, Applied Watch shall process the Order in accordance with the pricing terms and conditions of this Agreement.

**4.4   PRODUCTS.** Applied Watch will notify Reseller in the event that any Applied Watch Products are unavailable, need to be substituted or are discontinued. In addition, Applied Watch reserves the right to make changes and modifications in specifications, construction or design of the Applied Watch Products.

**4.5   SHIPPING.** Reseller is responsible for payment of all shipping and handling fees for delivery of Applied Watch Products. All deliveries of Applied Watch Products are FOB Applied Watch manufacturing facilities unless Applied Watch expressly states otherwise in its acceptance of the P.O.. Title and risk of loss shall pass from Applied Watch to Reseller or Reseller's customer at the point of delivery.

## SECTION V: DISCOUNTS AND PAYMENTS

**5.1   RESELLER'S PURCHASE PRICE.**  Prices on Applied Watch Products shall be as agreed to by Reseller and Applied Watch from time to time.

**5.2   PRICE CHANGES.  Provided Applied Watch has given thirty (30) days notice to Reseller,** Applied Watch may at any time change Applied Watch Product pricing or the Reseller's purchase price without liability, but any P.O.s accepted by Applied Watch before a price change takes effect shall be invoiced at the previous price.

**5.3   INVOICE AND PAYMENT TERMS.** Reseller's initial purchase of Applied Watch Products will be invoiced to Reseller as of the order shipment date and shall be paid for net thirty (30) day terms. For subsequent purchases of Applied Watch Products, Applied Watch will invoice Reseller as of order shipment date, and may require a security deposit before accepting any order. Reseller shall pay for Applied Watch Products in U.S. Dollars upon shipment to Reseller customer.

## SECTION VI: RETURNED MERCHANDISE

Applied Watch will accept returns for defective Applied Watch Products in accordance with

Applied Watch's Consumer Limited Warranty.

## SECTION VII: TRADEMARKS, TRADE NAMES

Reseller acknowledges that Applied Watch and/or its parent or affiliates are the sole and exclusive owners of the name "Applied Watch" and any abbreviations or variations thereof, and of any and all of Applied Watch's trademarks and trade names, service marks, trade logos and trade dress, whether registered or not (collectively "Trademarks") as Applied Watch may amend from time to time in its sole discretion. Reseller agrees not to register or use any mark(s) that are similar enough to be construed as Applied Watch Trademarks. Reseller acquires no rights to the Trademarks, and Reseller hereby assigns and transfers to Applied Watch all rights that it may acquire in and to the Trademarks, whether by operation of law or otherwise. Any approval for Reseller's use of any Applied Watch Trademark shall be made pursuant to an Applied Watch Trademark License Agreement executed separately by and between the Parties hereto.

## SECTION VIII: SOFTWARE

8.1    **SOFTWARE AS COMPONENT.** Applied Watch Products include as components certain software programs (collectively "Programs") proprietary to Applied Watch or licensed by it from third-party vendors, which may be periodically updated and substituted. Applied Watch has all rights necessary for it to market and distribute the Programs as Applied Watch Product components, as well as the right and authority to conclude this Agreement and to grant rights hereunder regarding the Programs. Title to the Programs remains with Applied Watch and/or its licensors, and Reseller has no rights to transfer them except as stated below.

8.2    **DISTRIBUTION RIGHTS.** Subject to the use license in Section 8.3 below, Applied Watch grants to Reseller during the Term a non-exclusive, non-transferable right to transfer to end users within the Territory the copies of the Programs it obtains under this Agreement only as components of Applied Watch Products, subject to the following terms and conditions:

   a.    Reseller shall sell or lease Applied Watch Products with the Program packages as integral parts, and shall abide by all terms and conditions imposed by the Programs' licensors. Reseller shall not open the Program packages or end user license packets or separate such Program packages (including documentation and end user licenses) from the Applied Watch Products. Reseller shall not copy or reproduce any Program (except as stated herein or in any Program's pre-packaged license agreement), nor modify, reverse engineer, disassemble, or de-compile any Program in any way.

   b.    Reseller shall promptly notify Applied Watch of any unauthorized use or copying of any Program.

   c.    Termination of this Agreement will automatically and immediately terminate Reseller's rights under this Section.

8.3    **USE LICENSE** Reseller shall pass on to end users of each Applied Watch Product a license to use the Programs in the form of a "break-the-seal" end user license agreement contained in the Programs' packages.

8.4    **COMPLIANCE WITH IMPORT REGULATIONS.** Reseller shall comply with all United States export control regulations, licensing or other requirements applicable to the Programs.

8.5    **DISCLAIMER OF WARRANTIES AND LIMITATION OF LIABILITY. EXCEPT FOR THE EXPRESS WARRANTIES STATED IN THIS AGREEMENT OR IN ANY PRE-PACKAGED LICENSE AGREEMENT FOR AN APPLIED WATCH PRODUCT COMPONENT, APPLIED**

WATCH (ON BEHALF OF ITSELF AND ITS LICENSORS) DISCLAIMS ALL OTHER REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE PROGRAMS, INCLUDING ALL IMPLIED CONDITIONS OR WARRANTIES OF NONINFRINGEMENT, MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. WITH RESPECT TO DEFECTS IN DISKETTES, COMPACT DISKS OR OTHER PHYSICAL MEDIA AND DOCUMENTATION, OPERATION OF THE PROGRAMS AND ANY APPLICATION OR USE OF THE PROGRAMS, IN NO WAY SHALL APPLIED WATCH (OR ITS LICENSORS) BE LIABLE FOR ANY LOSS OF PROFIT OR ANY OTHER COMMERCIAL DAMAGE, INCLUDING BUT NOT LIMITED TO SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR OTHER DAMAGES.

## SECTION IX: TERM

This Agreement's term ("Term") shall begin on the Effective Date and continue for one (1) year.

## SECTION X: TERMINATION

10.1    **TERMINATION.** By either party upon thirty (30) days' written notice.

10.2    **EFFECT OF TERMINATION.**

    a.    Upon termination of this Agreement, Applied Watch may terminate any or all orders which had not yet been accepted by Applied Watch by one of the two methods described in Section 4.2(a) of this Agreement.

    b.    Upon termination, Reseller shall immediately cease all marketing, promotion, advertising or reference to Applied Watch Products and shall have no further rights to use Applied Watch's marketing, promotion or advertising materials or other resources.

    c.    Termination will discharge and release Applied Watch from all obligations and liability under this Agreement, except as it expressly accepts for unfilled orders. The sole fact of this Agreement's termination shall not make either party liable to the other for any compensation, reimbursement, losses or damages whatsoever, though Reseller shall remain obligated to pay all outstanding balances on its Applied Watch Product purchases.

## SECTION XI: CONFIDENTIALITY

11.1    **CONFIDENTIAL INFORMATION.** Prior to and during the Term hereof, one party to this Agreement may convey to the other party proprietary and confidential information about the other party's services, strategy and analysis. Prior to and during the Term hereof this Agreement (including renewals) and for three (3) years thereafter, neither party shall disclose to any third party any such information marked CONFIDENTIAL, PROPRIETARY, PRIVATE or INTERNAL DATA, or which, though not so marked, could reasonably be construed as confidential or sensitive, such as the terms of this Agreement (all collectively "Confidential Information"), nor shall it use any such Confidential Information for its own benefit, except as provided herein. Any reliance on such Confidential Information is at such party's own risk. Nothing in this Section grants or implies any rights by license, estoppels, or otherwise. Confidential Information does not include information (i) in the public domain at the time of disclosure or which enters the public domain after such disclosure through no fault of either party, (ii) generally disclosed to third parties by either party without restriction, (iii) communicated to either party by a third party with the unrestricted right to do so, or (iv) approved for release by either party in writing.

11.2    **PRESENTATIONS AND PLANNING.** Applied Watch's oral and visual presentations



describing Applied Watch Products, business and product plans, and any inspections thereof by Reseller or its personnel shall all be deemed Confidential Information under this Agreement, whether so marked or not.

**11.3    SOLICITATION OF EMPLOYEES.** Resller agrees that during the period of this Agreement and for one year (1) following termination of the Agreement, Reseller shall not solicit or accept if offered to it, with or without solicitation, on Reseller's own behalf or on behalf of any other person or entity, the services of any person who is a current employee of the Applied Watch (or was an employee of the Applied Watch during the year preceding such solicitation), nor solicit any of Applied Watch's current employees (or any individual who was an employee of Applied Watch during the year preceding such solicitation) to terminate employment with Applied Watch, nor agree to hire any current employee of Applied Watch (or any individual who was an employee of Applied Watch during the year preceding such solicitation) into employment with Reseller or any other person or entity.

## SECTION XII: EXPORT CONTROLS

**12.1    COMPLIANCE WITH LAWS.** Reseller shall comply with all United States export laws and regulations applicable to Applied Watch Products, and shall obtain any licenses required for export.

**12.2    PRODUCTS OF U.S. ORIGIN TECHNOLOGY.** Reseller may sell Applied Watch Products only to end users within the Territory, and shall not export any Applied Watch Products, including Programs, without Applied Watch's advance written approval and, if required, U.S. government permission. This requirement shall survive termination or expiration of this Agreement. Reseller shall sell Applied Watch Products to any person or firm identified by the U.S. government as being denied the right to receive any U.S. product.

## SECTION XIII: LIMITATION OF LIABILITY AND REMEDIES; INDEMNITY

**13.1    LIMITATION OF LIABILITY.** EXCEPT TO THE EXTENT OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY LOSS OF PROFITS, LOSS OF BUSINESS, LOSS OF USE OR DATA, INTERRUPTION OF BUSINESS, OR FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, EVEN IF THE PARTY SHALL HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM AGAINST THE OTHER BY ANY THIRD PARTY. THE LIMITATIONS OF LIABILITY SET FORTH HEREIN SHALL NOT APPLY TO DAMAGES ARISING FROM CLAIMS FOR WHICH RESELLER HAS AGREED TO INDEMNIFY APPLIED WATCH PURSUANT TO THE PROVISIONS OF THIS AGREEMENT OR ARISING FROM ANY INTENTIONAL BREACH OF RESELLER'S REPRESENTATIONS AND WARRANTIES UNDER THIS AGREEMENT.

**13.2    INDEMNITY**

a.    Except as otherwise stated herein, Reseller shall indemnify and hold harmless Applied Watch against any and all claims, legal actions, losses, damages, liabilities, costs and expenses asserted against, imposed upon or incurred by Applied Watch arising out of or relating to:

I.    any misrepresentation or breach of warranty or covenant by Reseller under this Agreement;

II.    any actual or alleged act or omission of Reseller in the course of its performance hereunder;

III.    death or injury to any person or damage to any property resulting from

any product or part:

i.      not supplied by Applied Watch,

ii.     supplied by Applied Watch but changed, modified, adapted or refitted without Applied Watch's written authorization,

iii.    not in Applied Watch's standard inventory but purchased by Applied Watch at Reseller's direction, or

iv.     manufactured to Reseller's design, as well as any claim of infringement arising from the use of any Applied Watch Product with any other product as a combination not furnished by Applied Watch.

b.      Applied Watch shall defend Reseller from all claims, suits, damages, costs, expenses or liabilities actually incurred by Reseller as a result of any such claim. If a Product or part thereof is held to constitute an infringement and its intended use is enjoined, Applied Watch shall at its option procure for Reseller the right to continue using the Product or part, replace it with a non-infringing Product or part, modify it to become non-infringing, or remove it and refund its purchase price (less depreciation and amortization). This Section does not apply to (a) any product or part not supplied by Applied Watch; (b) any Product or part supplied by Applied Watch which is changed, modified, adapted or refitted without Applied Watch's express written approval; (c) any Product or part not in Applied Watch's standard inventory but purchased by it at Reseller's direction; (d) any Product or part manufactured to Reseller's design or (e) any claim of infringement arising from the use of any Product in combination with any other product not furnished by Applied Watch. THIS INDEMNITY IS APPLIED WATCH'S SOLE LIABILITY AND RESELLER'S SOLE REMEDY FOR INFRINGEMENT OF ANY PATENT, COPYRIGHT, TRADEMARK, TRADE SECRET OR OTHER INTELLECTUAL PROPERTY RIGHT.

## SECTION XIV: WARRANTIES AND REPRESENTATIONS

Applied Watch warrants and represents that the Applied Watch Products shall be delivered with good title, free of any rightful third party claim of infringement of any patent, copyright, trademark, trade secret or other intellectual property right recognized or registered within the United States and its possessions.

Applied Watch Products are covered by Applied Watch's Consumer Limited Warranty as referenced in Section VI, on standard terms and conditions supplied with each Applied Watch Product shipped and which are incorporated herein by this reference. Should Reseller resell Applied Watch Products to any entity other than an end-user, and Applied Watch Products are further resold, the final end-user may not receive any Applied Watch warranty or technical support.

## SECTION XV: BUSINESS STANDARDS; PRODUCT SERVICE PROVISION

15.1    **CONFLICTS OF INTEREST.** Reseller confirms that it has revealed all information pertaining to possible conflicts of interest created by sale of competing products or services or arising from other positions or contracts held by Reseller and represents that no conflict of interest exists. Reseller shall disclose to Applied Watch any future circumstances which could create possible conflicts of interest as soon as they become known by Reseller. Without limiting the generality of the foregoing, Reseller shall inform Applied Watch of any business relationship, circumstance, or situation which could prejudice in any way the conduct of Applied Watch marketing activities according to the highest ethical and business standards or place Reseller or Applied Watch in any kind of disreputable or embarrassing situation.

15.2    **ETHICAL STANDARDS.** Directors, officers, or employees of Reseller shall not, directly or indirectly, offer, promise or pay any bribes or other improper payments for the purposes of promoting Applied Watch Product sales to any individual, corporation, government official or agency, or other entity. No gift, benefit or contribution in any way related to Applied Watch or the sale of Applied Watch Products shall be made to political or public officials or candidates for public office or to political organizations, regardless of whether such contributions are permitted by local laws. Reseller shall generally abide by all Applied Watch policies and standards regarding conflicts of interest and ethics as may be adopted by Applied Watch or otherwise communicated to Reseller from time to time, such policies and standards being incorporated herein by this reference.

15.3    **AUTHORIZED SERVICE PROVIDER PROGRAM.** In the event Reseller is approved by Applied Watch as an Authorized Service Provider for Applied Watch Products, Reseller shall at all times during the period of such designation adhere to the standard terms, conditions, rules and policies of the Applied Watch Authorized Service Provider Program as may be issued by Applied Watch from time to time, and shall be solely responsible for all its acts and omissions in the course of acting as an Authorized Service Provider for Applied Watch Products.

15.4    **SALES GOALS.** Applied Watch and Reseller agree to meet once every three calendar months to review performance and sales goals.

## SECTION XVI: FORCE MAJEURE

Applied Watch shall not be liable for any failure to perform due to causes beyond its control, including but not limited to fire, flood, earthquake, explosion, accident, acts of public enemy, war, rebellion, insurrection, sabotage, epidemic, quarantine, labor disputes or shortages, transportation embargoes, failures or delays, inability to secure raw materials or machinery, acts of God or government (including denials of or onerous restrictions on export licenses), any such event of force majeure affecting Applied Watch's third-party suppliers, or judicial action. Similar causes shall excuse Reseller for failure to take Applied Watch Products ordered by Reseller other than those already in transit or specially fabricated or not readily saleable to other buyers.

## SECTION XVII: GENERAL PROVISIONS

17.1    **PARTIES' RELATIONSHIP.** The relationship between the parties hereto is solely that of independent seller and buyer with the right to resell.

17.2    **GOVERNING LAW; VENUE.** This Agreement and any controversy arising out of or in relation to it shall be governed by the law of the State of Illinois (conflicts of laws provisions excepted) and, the parties hereby submit to the jurisdiction of the state and federal courts of the State of Illinois, which shall have exclusive jurisdiction over all controversies in connection herewith. Reseller hereby waives any right to assert any rights or defenses within any other jurisdiction or to require that litigation regarding this Agreement take place elsewhere.

17.3    **SEVERABILITY.** If any provision of this Agreement shall be declared void, invalid, or illegal, the validity or legality of all other provisions of the Agreement shall not be affected thereby.

17.4    **NOTICES.** Except as otherwise provided in this Agreement, all notices, demands and other communications hereunder shall be in writing and shall be delivered personally or sent by facsimile, other electronic means or nationally recognized overnight courier service addressed to the party to whom such notice or other communication is to be given or made at such party's address as set forth below, or to such other address as such party may designate in writing to the other party from time to time in accordance with the provisions hereof, and shall be deemed given when personally delivered, when sent electronically or one (1) business day after being sent by

overnight courier.

If to Reseller:          Best Enterprises, LLC
                         6989 N. 55th Street
                         Suite D
                         Oakdale, MN 55128
                         USA

If to Applied Watch:     Applied Watch Technologies, LLC
                         1095 Pingree Road
                         Suite 213
                         Crystal Lake, IL 60014
                         USA

EITHER PARTY MAY CHANGE THE ADDRESS TO WHICH NOTICE MUST BE SENT BY GIVING
WRITTEN NOTICE OF SUCH CHANGE TO THE OTHER PARTY IN THE MANNER PROVIDED
HEREIN.

17.5    **ASSIGNABILITY.** Neither party may assign or transfer this Agreement without the other party's
        advance written consent. Provided, however, that in the event Applied Watch is involved in an
        extraordinary transaction as defined on **Exhibit D**, Applied Watch may appoint another reseller in
        the Territory with respect to Applied Watch Products (other than the Applied Watch Command
        Center™) in accordance with **Exhibit D**.

17.6    **NO WAIVER.** Any failure of either party to enforce at any time, or for any period of time, any
        provision of this Agreement, shall not constitute a waiver of such provision or in any way affect
        the validity of this Agreement.

17.7    **COMPLETE AGREEMENT.** This Agreement with its Exhibits contains the parties' entire
        Agreement and supersedes all previous communications, representations or agreements, oral or
        written, regarding its subject matter. No addition to or modification hereof shall bind either party
        unless reduced to writing and duly executed by the parties as this Agreement was, subject,
        however, to revisions of **Exhibits A** through **D**, which Applied Watch may revise at any time
        pursuant to Section 17.8.

17.8    **EXHIBITS.** All Exhibits attached hereto are incorporated herein by this reference, and Applied
        Watch has the right to amend in writing any of those Exhibits in its sole discretion.

IN WITNESS WHEREOF, this Agreement has been executed by the parties' authorized representatives on
the date first written above.

**Applied Watch Technologies, LLC**                    **Reseller**

1095 Pingree Road                                      6989 N. 55th Street
Suite 213                                              Suite D
Crystal Lake, IL 60014                                 Oakdale, MN 55128

By: _____                                  By: _____
Name: Eric Hines                                       Name: _THOMAS A. BEST_

Title: CEO, Chairman, President                        Title: _PRES / DOE WS_

Date: _05 - 01 - 06_                                   Date: _5 - 01 - 06_

_____                _____
Applied Watch Technologies                 Page 9 of 13
     4/21/2006
Confidential

## EXHIBIT A

**APPLIED WATCH'S RESELLER TERRITORY LIST.** Reseller's Territories shall be defined as the Continental United States and Hawaii. Prior to any termination of this agreement, Applied Watch will send written notice to the Reseller.

## EXHIBIT B

**APPLIED WATCH PRODUCTS.** Reseller's exclusive right to resell Applied Watch Products within the Territory described in **"Exhibit A"** applies only to the Applied Watch Command Center™. Reseller may sell any other Applied Watch Products on a non-exclusive right basis. Additionally, at all times, Applied Watch reserves the right to sell any Applied Watch Products, including Applied Watch Command Center™, directly to its preexisting customers at any time without notice to Reseller.

**APPLIED WATCH PURCHASE ORDER FORM.** Reseller's standard purchase order will be sufficient to constitute an order, but no terms and conditions stated on Reseller's purchase order will have any effect on the terms of this Agreement and are superseded in their entirety by this Agreement.

## EXHIBIT C

**Personal Guarantee**

## EXHIBIT D

**EXTRAORDINARY TRANSACTIONS.**

# EXHIBIT B

----- Original Message -----
From: "Eric Hines" <eric.hines@appliedwatch.com>
To: "Tom Best" <tbest@best-ent.com>; <sbest@best-ent.com>;
<plach@cnmidwest.com>; <plach@best-ent.com>
Sent: Tuesday, October 24, 2006 7:53 PM
Subject: Applied Watch and BEST Enterprises


> -----BEGIN PGP SIGNED MESSAGE-----
> Hash: SHA1
>
> Gentlemen,
>
> I wanted to thank you for your time today in meeting with me to pick our
> discussions back up in hopes of continuing where we last left our
> relationship.
>
> Its evident to me after our discussions today that this is a tremendous
> step forward for both companies in both revenue generation and expanding
> across the US with BEST's name and our technology. I am confident we can
> do this right the second time around and am looking forward to hitting
> the ground running.
>
> I have over a million in my sales pipeline currently that after
> dissolving my internal sales team have been massaging myself. With BEST
> becoming the Applied Watch sales force, I can focus more on marketing
> and public relations, which is where I'd like to be. I am confident that
> the relationship between us will evolve in to completely transparent
> separations and BEST will be seen by industries alike as our sales force
> rather than a wholly separate company.
>
> To recap our meeting today, I see BEST taking over all of our sales
> efforts, which is what you do best (no pun intended:) allowing us to
> focus on what we do best, which is our technology. We've surpassed and
> crushed our earnings expectations this year for a fourth straight year
> in a row and look forward to BEST being a significant contributor to
> that revenue as we close out the year and enter 2007.
>
> I am certain that Applied Watch will generate so much unrealized revenue
> for BEST that you will want to do nothing but focus on Applied Watch
> sales and abandon your other focus areas. I look forward to Applied
> Watch building BEST in to a multi billion dollar business and bringing
> us in to every commercial and federal/military organization looking to

> build a cost effective security infrastructure.
>
> Lets sell!
>
> - --
>
> Best Regards,
>
> Eric Hines, GCIA, CISSP
> CEO, President
> Applied Watch Technologies, LLC
> 1095 Pingree Road
> Suite 221
> Crystal Lake, IL 60014
> Toll Free: (877) 262-7593
> Fax: (847) 854-5106
> Cell: (847) 456-6785
> Web: www.appliedwatch.com
>
> -----BEGIN PGP SIGNATURE-----
> Version: GnuPG v1.4.5 (Darwin)
> Comment: Using GnuPG with Mozilla - http://enigmail.mozdev.org
>
> iD8DBQFFPrWB1va6QYTV0EMRAnIBAKCIHG2FZS43HY96DFnPe4qYS0S+WACfePD4
> M/XM9f59nPxrkgpiLLbDcEs=
> =OAIX
> -----END PGP SIGNATURE-----

# EXHIBIT C

## FIRST AMENDMENT TO RESELLER AGREEMENT

**THIS FIRST AMENDMENT TO RESELLER AGREEMENT** is made and entered into this 1st day of November, 2006 (the "First Amendment"), by and between Applied Watch Technologies, LLC, an Illinois limited liability company ("Applied Watch"), and Best Enterprises, LLC, a Minnesota limited liability company (the "Best").

A.    Best and Applied Watch entered into a Reseller Agreement dated May 1, 2006 (the "Agreement").

B.    The parties wish to amend the terms of the Agreement pursuant to the terms and condition of this First Amendment.

**NOW THEREFORE, the parties agree as follows:**

**1.    Recitals.**    The recitals set forth above are hereby incorporated by reference and made a part of this First Amendment.

**2.    Term.**    The Term of the Agreement is hereby extended through December 31, 2007.

**3.    Exclusivity; Sales Process.**    Pursuant to the Agreement, Best is appointed as an exclusive, independent Reseller of Applied Watch Products in the Territory.    In furtherance of such status, the parties agree that those marketing, customer communication, price quote, ordering, shipping and other sales-related activities shall be undertaken in accordance with those policies and procedures set forth on **Exhibit A** to this First Amendment.

**4.    Pricing.**    Sections 5.2 of the Agreement is hereby deleted and the following is hereby inserted in its place: The parties agree that the pricing and margins for the Applied Watch Products and the installation work performed in accordance with Paragraph 4 of this First Amendment shall be as set forth on **Exhibit B** attached to this First Amendment.    In the event that such pricing and margins as set forth on **Exhibit B** shall change, such changes shall be mutually agreed to by Best and Applied Watch.

**5.    Installations.**    Best shall be responsible for the installation of all Applied Watch Products.

**6.    Full Force and Effect.**    In the event of any inconsistencies between this First Amendment and the Agreement, the terms and conditions of this First Amendment shall control.    Except as amended by this First Amendment, the Agreement shall remain in full force and effect according to its terms.    Any capitalized terms used in this First Amendment and not otherwise defined herein shall have the meanings assigned to such terms in the Agreement.

1

7.     **Sub-resellers.** Best shall be responsible for retaining, on terms and conditions acceptable to Best, sub-resellers (the "Sub-resellers") to perform certain of Best's obligations under the Agreement, as amended by this First Amendment.   All Sub-resellers appointed by Best shall be required to complete training and certification by Applied Watch;   Cost of such training shall be paid by such sub-sellers and shall be determined in the reasonable discretion of Applied Watch.

8.     **Waiver, Modification or Amendment.**  No waiver, modification or amendment of any term, condition or provision of this First Amendment shall be valid or of any effect unless made in writing, signed by the party to be bound or its duly authorized representative and specifying with particularity the nature and extent of such waiver, modification or amendment.  Any waiver by any party of any default of the other shall not effect, or impair any right arising from, any subsequent default. Nothing herein shall limit the rights and remedies of the parties hereto under and pursuant to this First Amendment, except as hereinbefore set forth.

9.     **Entire Agreement.**   This First Amendment, together with the Agreement, contains the entire understanding of the parties hereto in respect of transactions contemplated herby and supersedes all prior agreements and understandings between the parties with respect to such subject matter.

10.     **Governing Law.**  This First Amendment shall be construed and enforced with the laws of the State of Illinois.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the day and year first above written.

Applied Watch Technologies, LLC

By: _____
Eric Hines, President

Best Enterprises, LLC:

_____
Thomas A. Best, President

## EXHIBIT A

## SALES/MARKETING/ORDER PROCESSING ACTIVITIES

Best shall be responsible for all sales and marketing related activities for Applied Watch Products in the Territory, including, but not limited to:

- Pursuing all sales leads. Applied Watch agrees that it shall cause all sales leads to be forwarded to Best in order that Best may pursue such leads.

- Any pricing inquiries will be forwarded to Best for follow up.

- All quotes (whether from Best or from Applied Watch in the event of a quote to a preexisting customer) will be presented to customers on Best letterhead or through other appropriate Best channels (e.g. e-mail).

- All customer orders will be placed with Best. Best will then deliver a purchase order to Applied Watch in accordance with the Agreement, as amended.

- In the event an order is placed directly with Applied Watch, such order shall be forwarded to Best for processing in accordance with the Agreement, as amended.

### Existing Relationships

With respect to those customer relationships existing between Applied Watch and a customer as of the date of this First Amendment ("Existing Relationships"), Applied Watch may provide such Existing Relationships with price quotes and order processing as appropriate provided, however, that Applied Watch shall notify Best in writing of such Existing Relationships. A full and complete list of Existing Relationships is attached to this **Exhibit A**. Best shall not be entitled to any gross profit margins with respect to Existing Relationships.

# EXHIBIT B
## PRICING AND MARGINS

### Gross Profit Margins to Best

Equipment- 40%
Software- 45%
Taps- 20%
Installation- 100%
Annual Subscriptions- 25%

For purposes of this Exhibit B, "gross profit margin" means the value received by Best from customers purchasing Applied Watch Products which exceeds the cost of Applied Watch Products paid by Best to Applied Watch.

### Freight Charges

Non-governmental orders- freight to be paid by customers.

Government orders- freight charges must be included in pricing.

### Pricing

Gross profit margins listed above are based on suggested manufacturer's retail prices as set forth on the pricing schedule attached to this Exhibit B.

4:59 PM
11/13/08

## Applied Watch Technologies, LLC
## Customer Contact List
### November 6, 2006

| Customer | Bill to |
|---|---|
| 20th Century Fox | Fox Entertainment Group Kevin Graziadei 10201 W. Pico Blvd, 2nd Floor Suite 224 Los Angeles, CA 90064 |
| 4 Networks / Transtecnet, Inc. | 4 Networks / Transtecnet, Inc. Ilan Jacobs 1150 South Tenth St, San Jose, CA 95112 |
| Ametworks | Ametworks Ilan Jacobs 1109 S. 10th St, San Jose, CA 95112 |
| ACE Computers | ACE Computers Medienne Bambardel 1425 East Algonquin Road Arlington Heights, IL 60005 |
| Advanced Computer Training (ACT) | Advanced Computer Training (ACT) Aloe Smollak 4308 Commercial Way Glenview, Illinois 60028 USA |
| Air Force/Field Activity Office | AF/FAC Attn: Accounts Payable PO Box 220700 Centreville, VA 20120-0700 |
| Allied Network Solutions | Allied Network Solutions Karina Roxas 1368 Blue Oaks Blvd Suite 200 Roseville, CA 95570 |
| AOL, LLC | AOL, LLC Attn: Accounts Payable PO Box 2330 Ashburn, VA 2046-2330 |
| Animeo Services company | Animeo Services company Omar Saaed 9201 West loop South Houston, TX 77099 |
| AUTOMATIONDIRECT.COM | AUTOMATIONDIRECT.COM Tim Lawrence 3505 Hutchinson Rd Cumming, GA 30040-3680 |
| Bank of the West | Bank of the West Attn: Information Technology -CC461 PO Box 5396 Concord, CA 94524-0396 |
| Bankers Bank Card | Bankers Bank Card Greg Clayton P.O. Box 560325 Dallas, TX 75356 |
| Batelle | Batelle - Pahl, John Cathoun 902 Battelle Boulevard P.O. Box 999 Richland, Washington 99352 |
| Best Enterprises, LLC | Best Enterprises, LLC Attn: Accounts Payable 8990 North 55th St, Suite D Oakdale, MN 55128-1702 |
| Blue Tech, Inc. | Blue Tech, Inc. Attn: Accounts Payable P.O. Box 715 La Jolla, CA 92030 |
| Boeing/Data West | Data West Mary Jane Hone 23332 Madero Suite H Mission Viejo, CA 92691 USA |
| Bowhead Support Services | Bowhead Support Services Attn: Accounts Payable 15163 Dahlgren Road Suite 102 King George, VA 22485-5039 |
| Brigham Young University | Brigham Young University Scott Liggett Provo, UT 84602 |
| Burwood Group Inc. | Burwood Group Inc. Ira Nimran 70 N. Clark Chicago, IL 60602 |
| Capital IQ, Inc. | Capital IQ Ken Pfeli 22 Cortlandt Rd., 6th Fl. New York, NY 10007 |
| Central Washington University | Central Washington University Accounts Payable 400 E University Way Ellensburg, WA 98926-7480 |
| CEW, Inc. | Counter Trade Products Accounts Payable 7585 West 66th Ave. Arvada, CO 80003 |
| Chicago Board of Trade | Chicago Board of Trade Accounts Payable Attn: Robin Lugo 141 W. Jackson Blvd, Ste 860 Chicago, IL 60604 |
| China Lake Navy Base | China Lake Navy Base Megan White Building 2 Room 106 China Lake, CA 93555 |
| Citrix Online | Citrix Online Michael Ziebell 6385 Hollister Avenue Santa Barbara, CA 93111 |
| Coda Green Networks | Coda Green Networks Mark Moore 849 W. California Ave, Suite 320 Sunnyvale, CA 94086 |
| Combyta USA, Inc | Combyta USA, Inc Dan Ebert 5415 Easton Dr Suite 101 Springfield, VA 22151 |
| ComEd | ComEd Patrick O'Rourke 37 W. Monroe Chicago, IL 60606 |
| Computerland | Computerland Robert Stanzeipher 2903 Lydia Dr. Wichita Falls, TX 76306 |
| Cook County Treasurer Office | Cook County Treasurer Office Accounts Payable 118 N. Clark St. Room 112 Chicago, IL 60602 USA |
| Corporate PC Source | Corporate PC Source Julie Sroka 688 Supreme Drive Bensenville, IL 60106 |
| Counter Trade Products | Counter Trade Products Accounts Payable 7585 West 66th Ave, Arvada, CO 80003 |
| Cricket Communications DBA ANS | Cricket Communications DBA; ANS 2900 C Street, Suite 601 Anchorage, AK 99508 |
| Dan Dorucha | Schwok Dan Dorucha 1695 River Road Des Plaines, Illinois 60018 |
| Data Industries, LTD | Data Industries, LTD Attn: Accounts Payable 100 Vant St. New York, NY 10005 |
| Department Of Defense | Department Of Defense Tom Baduri Office Of The Comptroller |
| Department of Veteran Affairs | Department of Veteran Affairs David Butler 3801 Miranda Ave. Palo Alto, CA 94304 |
| Dyncorp International | Dyncorp International Attn: Accounts Payable P.O. Box 851217 Ft. Worth, TX 76101-1217 |
| Electoya Networks | Electoya Networks Sherryl Tuscany 7 Henry Clay Dr Merrimack, NH 03054 |
| Enventis Telecom | Enventis Telecom Attn: Accounts Payable 2459 Xenium Lane N Ste 130 Plymouth, MN 55441 |
| Exon Barver Group | Export Server Group Gregg Crawford 319 B, River Rd. Bedford, NH 03110 |
| Express Computer Systems | Express Computer Systems Arnold Muir 1723 Kolvar Ave. Irvin, CA 92614 |
| FAA, Commercial Space Transportation | FAA, Commercial Space Transportation Christopher Harris 800 Independence Ave Room 331 Washington, DC 20591 USA |
| FDI Academy | IGov Accounts Payable 8200 Greensboro Drive, Ste 1200 McLean, VA 22102 |
| FCN | FCN Dicy Goldberg 12315 Wilkins Ave Rockville, MD 20852 |
| Federal Aviation Administration, AHR | Federal Aviation Administration, AHR Mark Jackson FAA National Headquarters 800 Independence Ave., SW Washington, DC 20591 USA |
| Fivepoints Compliance, Inc. | Fivepoints Compliance, Inc. Josh Stone 136 Centre Street New York, NY 10013 |
| Fowler and Associates | Fowler and Associates Sue Fowler 6604 Greenfield Circle N.W. North Canton, OH 44720 |
| Fox Entertainment Group | Fox Entertainment Group Attn: Accounts Payable P.O. Box 900 Beverly Hills, CA 90035 |
| Framatome | Framatome Accounts Payable 1340 Ridgeland Pkwy Suite 130 Alpharetta, GA 30004 |
| FTDATA Inc. | FTDATA Inc. Jim Accounts 312 Marshall Avenue Suite 1000 Laurel, MD 20707 |
| Gynecological Oncology Group Datacenter | Gynecological Oncology Group Scott Gould Roswell Park Cancer Institute Elm & Carlton Streets Buffalo, NY 14263-0001 |
| Harvard University | Harvard University Bill Terwilliger 60 Oxford St Cambridge, MA 02138 |
| Hauman Inc | Hauman Inc Lijen Lien 2136 Ringwood Ave San Jose, CA 95131 |
| Iberai, Inc. | Iberai, Inc. Attn: Accounts Payable 80-8 East Jeffyn Boulevard Deer Park, NY 11729 |
| IGov.com | IGov.com 8200 Greensboro Dr. Suite 1200 McLean, VA 22102 |
| Inacom Information Systems | Inacom Information Systems Shawn Wingons 724 E Main St. Salisbury, Maryland 21801 USA |
| InfoSec Institute | InfoSec Institute Attn: Nolan Karlec 805 N. Lake Shore Dr. Suite 8221 Chicago, IL 60611 |
| Intelligent Enterprise Solutions | Intelligent Enterprise Solutions Attn: Accounts Payable 6901 Rockledge Drive, Suite 900 Bethesda, MD 20817 |
| Intermountain Health Care - PNS | Intermountain Health Care - PNS Attn: Accounts Payable 36 South State Street Suite 2300 Salt Lake City, Utah 84111 USA |
| IPNB, Inc | Botercom LLC 17 Bren St, 17th Floor New York, NY 10004 |
| Istituto Europeo di Oncologia | Istituto Europeo di Oncologia Via Filodrammatici, 10 20121 Milano Italy |
| JNT Enterprises | JNT Enterprises Julius Turk 262 Vehiclation Mount Prospect, IL 60056 |
| Kelly Communications Systems | Kelly Communications Systems Attn: Accounts Payable 1135 Spruce Drive Mountainside, NJ 07092 |
| Kennedy Space Center | Kennedy Space Center Charles Tucker Building M6-342 Room 844M Kennedy Space Center, FL 32899 |
| Lackland Air Force Base | Lackland Air Force Base Clifton Wells Lackland AFB, TX |
| Lawrence Livermore National Laboratory | Lawrence Livermore National Laboratory Canela Soto 7000 East Ave., P.O. Box 808, L-1 Livermore, CA 94550 |
| Leap Wireless | Cricket Communications - AP Dept PO Box 501430 San Diego, CA 92150-1430 United States |
| Lee Clemens Computing Services | Lee Clemens Computing Services Lee Clemens 5178 Shawnee Blvd Schnecksville, PA 18078-2609 USA |
| Lockheed Martin Services, Inc. | Lockheed Martin Services, Inc. Attn: Accounts Payable MBN 03-34 1001 Snyder Dr Richland, WA 99354 |
| Miami-Dade Expressway Authority | Miami-Dade Expressway Authority Kalimu Man 3790 NW 21st St. Miami, FL 33142 USA |
| Microcomp | Microcomp Greg Birtrane 2 Metyland Ave Gaithersburg, MD 20877 USA |
| Micron Technology, Inc. | Micron Technology, Inc. Roshelle Willis 1-900 Post Office Box 6 Boise, ID 83707-0006 |
| MTM Technologies | MTM Technologies Dan Nardo 502 Silver Lake Boulevard Suite 103 Dover, DE 19904 |
| National Archives and Records Admin | National Archives and Records Admin Robert Colette 8601 Adelphi Road Suite 4400 College Park, MD 20740 USA |
| Naval Space Warfare Command (SPAWAR) | SPAWAR Sarah Bandarski 120 West Avenue Suite D Pensacola, FL 32500 |
| Naval Surface Warfare Center | Naval Surface Warfare Vendor Pay (Code XDM10) 17320 Dahlgren Road Dahlgren, VA 22446-5100 |
| NCC Networks, Inc. | NCC Networks, Inc. Kamala Motton 205 Telgam Road Suite A Elgin, IL 60123 |
| NCIS | NCIS Deborah Sharpe 1914 N. ST, SE Suite 300 Washington, DC 20374 |

4:50 PM
1/08/06

## Applied Watch Technologies, LLC
## Customer Contact List
November 8, 2006

| Customer | Bill to |
|---|---|
| Network Advocates, Inc. | Network Advocates, Inc. Tom Troutman 8001 Shelbyville Road 288 Durhams Louisville, KY 40222 |
| Network Data Systems | Network Data Systems Diane Morduic 1821 Rohlwing Road Suite D Rolling Meadows, IL 60008 |
| News International Plc | News International Limited IT Accounts PO Box 151 Cygnet Road Hampton, Peterborough PE7 0FD |
| Nice Systems | Nice Systems Nova Button 301 Route 17 N, 10th Floor Rutherford, NJ 07070 |
| Nicka Pizza | Nicka Pizza |
| Nielsen Media Research | Nielsen Media Research Mike Morell 501 Brooker Creek Blvd Oldsmar, FL 34677 |
| NBT, Inc. | NBT, Inc. Brian Bogel 2060-90 Finley Road Lombard, IL 60148 |
| NBT, Inc. | NBT, Inc. Dave Rovala 2050-90 Finley Road Lombard, IL 60148 |
| OSNM, Inc. | OSNM, Inc. Mike Partona 99-30 Manac Street Forest Hills, NY 11375 |
| Pacific Datacom Systems, Inc. | Pacific Datacom Systems, Inc. Attn: Gary Greening 1092 Calle Negada Suite C San Clemente, CA 92673 USA |
| Pannaway Technologies, Inc. | Pannaway Technologies, Inc. Ellen Carney 215 Commerce Drive Portsmouth, NH 00801 |
| Paychax | Paychex |
| Phoenix Internet | Phoenix Internet Gilbert Gutierrez, Jr. 2922 W Clarendon Ave Phoenix, AZ 85017 |
| Pratt & Whitney / UTC | The Brimd Group P.O. Box 2248 Dunedin, FL 34697 |
| Pulte Homes | Pulte Homes Jeff Willoughby 1230 W. Washington Suite 600 Tampa, FL 33701 |
| Radix Gear LLC | Radix Gear LLC Steven Rankor 735 Arlington ave. north Suite 204 St. Petersburg, FL 33701 |
| Railroad Retirement Board | Railroad Retirement Board Attn: Accounts Payable 844 North Rush Street Chicago, IL 60611 USA |
| Ranch Networks | Ranch Networks Brian Allah Beacon Hill Plaza, Suite 220 85 Highway 34 Morganville, NJ 07751 |
| Schenk, Inc. | Schenk, Inc. Tim Hannekamp 1895 River Road Des Plaines, Illinois 60016 |
| 3I International | 3I International David Lopez 4040 East Bijou Street Colorado Springs, CO 80909 USA |
| Rolaroom | Rolaroom PO Box 820220 Norcross, GA 90092 |
| SPAWAR Pensacola | SPAWAR Sam Lacour 130 West Avenue Suite D Pensacola, FL 32506 |
| SRA International | SPAWAR Pensacola Sarah Bandurski 130 West Avenue Suite D Pensacola, FL 32508 |
| Stonebridge Bank | SRA International Attn: Accounts Payable 4300 Fair Lakes Court Fairfax, VA 22033 |
| Sutherland Global Services | Stonebridge Bank Accounts Payable 624 Willowbrook Lane West Chester, PA 19382-6554 USA |
| Sword & Shield Enterprise Security, Inc. | Sutherland Global Services Attn: Accounts Payable 1180 Jefferson Road Rochester, NY 14623 |
| systemsandsolutions.net | Sword & Shield Enterprise Security, Inc. Tom Payne 10301-A Technology Drive Knoxville, TN 37932 |
| System Federal Corp. | systemsandsolutions.net Stephanie Hinson 1800 Park Shore Drive Cumming, GA 30041 |
| Technology Specialists, Inc. | System Federal Corp. Marilyn Campbell 4027 Colonel Glenn Hwy Suite 210 Dayton, OH 45431 |
| Telesource Services LLC | Technology Specialists, Inc. James Williams 303 Second St. Suite 2 Annapolis, MD 21403 USA |
| The Sutherland Group, Ltd. | Telesource Services LLC Attn: Accounts Payable 1450 Highwood East Pontiac, MI 48340 |
| thinkorswim, Inc. | Sutherland Global Services, Inc. Attn: Accounts Payable 1180 Pittsford-Victor Road Pittsford, NY 14534 |
| Tim Hannekamp | thinkorswim, Inc. Linwood Me 3304 North Lincoln Avenue Chicago, IL 00687 USA |
| Tone/Vision, Inc. | Schenk, Inc. Tim Hannekamp 1895 River Road Des Plaines, Illinois 00016 |
| Tribourough Bridge and Tunnels | Tone/Vision, Inc. Sophia Zugerville 1341 W. Fullerton, Ste. 112 Chicago, IL 60614 |
| U of Texas Medical Branch | Triborough Bridge and Tunnel Authority 2 Broadway - 23rd Floor AP New York, NY 10004 |
| University of Iowa | U of Texas Medical Branch Accounts Payable 301 University Blvd Galveston, TX 77555-0997 |
| University of Rochester Medical | University of Iowa Accounts Payable and Travel 202 PCO Iowa City, IA 52242-2500 USA |
| US Army | University of Rochester Medical Accounts Payable 1325 Mt Hope Ave Rochester, NY 14620 |
| US Bureau of Reclamation | US Army1st Information Operations Command Attn: Lawrence Stornell 8826 Beulah St. Fort Belvoir, VA 22060 |
| US Department of Energy | US Bureau of Reclamation Central Valley of Operations Office Attn: Jayce Dodson 3310 El Camino Ave. Ste 300 Sacramento, CA 95821 |
| US Dept. of Agriculture | US Department of Energy Michael Weaver SC-31/GTN E-244 19901 Germantown RD Germantown, MD 20874 |
| Vermont National Guard | US Dept. of Agriculture Accounts Payable 1800 M Street, NW Washington, DC 20036 |
| Vicor Industries Inc. | Vermont National Guard USPFO-OVT, VT-PFO-CO, Bldg 3 789 Vermont National Guard Road Colchester, VT 00446 |
| Yuma County ITS | Vicor Industries Inc. Attn: Accounts Payable 325 Country Rd Tenafly, NJ 07670 |
| Zones | Yuma County ITS Austin Galley 2717 S. Avenue B Yuma, AZ 85354 |
|  | Zones Mike Thornbloom 1102 15th Street S.W. Suite 102 Auburn, WA 98001 |

# EXHIBIT D

----- Original Message -----
From: "Eric Hines" <eric.hines@appliedwatch.com>
To: "Tom Best" <tbest@best-ent.com>
Sent: Tuesday, March 27, 2007 4:44 PM
Subject: Applied Watch


> -----BEGIN PGP SIGNED MESSAGE-----
> Hash: SHA1
>
> Hi Tom,
>
> Thank you for speaking with me today. I want to try and clarify my
> points in hopes that you will understand, I'm not trying to cut bait,
> rather, have some control over reaching our sales goals.
>
> Having said that, I want to outline my reasons for narrowing your
> exclusivity to the Midwest region:
>
> 1) We picked up the relationship with Best back in Q3 of 2006. Its been
> over 6 months and all of the sales opportunities that we're pursuing
> right now have all been opportunities Applied Watch has harvested.
>
> Best to date has not provided a business plan on how it will help us
> achieve the $5M in sales we have to reach, which means that you have to
> add an additional 40% to that to calculate how much Best has to sell.
> With Phil no longer at Best, how are you planning on reaching this
> number now as the only other person there that I can think of is Jamie B
> who is already too swamped as it is so cant realistically see him out
> there harvesting sales leads.
>
> 2) I am taking on all the risk by paying the base salary of Phil and
> Buck. Buck, a phenomenal sales person will be working sales for you in
> the Midwest region. You will not be paying his salary, only sharing his
> commission with me.
>
> 3) With the new arrangement, Best will have exclusivity across the 10
> state region identified in your agreement with WG Technologies of the
> Midwest. Best will also have exclusivity in sales to the Federal and
> Military.
>
> 4) Outside of the Midwest and Government sector, we will pay for 100% of
> the tradeshow costs. Any tradeshows in the midwest and government we

> will split the costs on.
>
> 5) I will reimburse you for any of Phil's expenses incurred from
> previous shows outside of the territory above.
>
> I trust this is amicable. Please understand my position and why I've had
> to make this decision.
>
>
>
>
> - --
>
> Best Regards,
>
> Eric Hines, GCIA, CISSP
> CEO, President
> Applied Watch Technologies, LLC
> 1095 Pingree Road
> Suite 221
> Crystal Lake, IL 60014
> Toll Free: (877) 262-7593
> Fax: (847) 854-5106
> Cell: (847) 456-6785
> Web: www.appliedwatch.com
>
> -----BEGIN PGP SIGNATURE-----
> Version: GnuPG v1.4.5 (Darwin)
> Comment: Using GnuPG with Mozilla - http://enigmail.mozdev.org
>
> iD8DBQFGCZAu1va6QYTV0EMRAgxQAJ49A8k+0pJ7Mv//G2YBqhfdeeITI.QCcCF5k
> 4msgk1O1Fl5cDzhq5pslO/Q=
> =1fII4
> -----END PGP SIGNATURE-----

# EXHIBIT E

----- Original Message -----
From: Buck Bundhund
To: '_Tom Best'
Cc: 'Eric Hines'
Sent: Friday, May 11, 2007 4:25 PM
Subject: Agreement Resolution

Tom,

I have reviewed the Reseller Agreement and the First Amendment and have provided my initial comments below. The future goal is to set up healthy mutually beneficial business relationship between Best Enterprises and Applied Watch Technologies. This will happen by establishing a mutually beneficial agreement between the two companies. While that seems obvious, it is my assessment the current agreement has not and will not provide the foundation to achieve the results of its intent. Before we can establish a new agreement we need to conclude matters on the current agreement.

It appears to me the goal of this agreement was for Applied Watch to outsource sales and marketing to Best Enterprises. It is apparent to me this agreement was doomed to fail from its inception for a number of reasons. I believe we need to arrive at a reasonable and mutually equitable solution for the current agreement and then put in place a new agreement that creates a healthy partnership. I believe any financial resolution ought to be based on effort and involvement of the particular opportunity.

- **Interactions Corps** –Phil was correct, I brought this to Applied Watch. Phil did make the quote, but did not present the product or value proposition to the customer. I believe a 10% commission to Best is fair.
- **Novarra Corporation**-Phil did interact and drive this opportunity, but was not actually speaking to the decision maker. I know this from speaking to the Peter. He submitted budget request to his boss and I am working with them to get this approved and funded. I recommend 30% to on this deal.
- **FAA**-I am aware this deal has been pushed to Summer 2007/or when SNORT can handle IPv6. This will still take some significant sales effort. FAA was also an original Applied Watch customer. I recommend 10% to Best deal.
- **Smartronix** – They are going to start evaluating the Applied Watch solution. This deal is not even close to done. The sale will also be smaller up front as they are moving to a new building. I recommend 40% to Best on this because they were found at the FOSE show.
- **Dillards**- Again this is a Applied Watch generated deal but Phil did spend some time. I recommend 10% to Best.
- **Pleasant Holidays**- We are continuing to work on this deal. We just had another webinar with their team. I believe we will be recommended for procurement, but there is still work to be done. I recommend 20% to Best.
- **Trade Shows**- FOSE, FAA, AFCEA, others? I do believe we should honor the

agreement discounts on all opportunities coming from these shows because of the mutual contributions to the shows. We will supply all leads gathered from the Trade Shows so that we can all track them.

I will call you to discuss further.

Thanks,
Buck


Buck Bundhund
Vice President of Sales
Applied Watch Technologies, LLC
1095 Pingree Road
Suite 221
Crystal Lake, IL 60014
Toll Free: (877) 262-7593
Fax: (847) 854-5106
Cell: (847) 630-3579
Email: buck.bundhund@appliedwatch.com
Web: www.appliedwatch.com

**The Undisputed Leader in Enterprise Open Source Security Management**