## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BEST ENTERPRISES, LLC, a<br>Minnesota limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 6547 |
| v. | ) ) | Judge Matthew F. Kennelly |
| APPLIED WATCH TECHNOLOGIES,<br>LLC., an Illinois limited liability<br>company, and ERIC HINES,<br>an individual, | ) ) ) ) ) | |
| Defendants. | ) | |

### AMENDED COMPLAINT

Plaintiff, Best Enterprises, LLC ("Best Enterprises"), by its attorneys, Freeborn & Peters

LLP, as for its complaint against Defendants, Applied Watch Technologies, LLC ("Applied

Watch") and Eric Hines ("Hines"), alleges as follows:

### Nature of the Case

1.      Best Enterprises brings this suit seeking redress for the substantial monetary and

other injuries suffered as a result of the unlawful behavior of Applied Watch and Hines, its

former CEO, Chairman and President.  Best Enterprises entered into a written agreement with

Applied Watch, pursuant to which Best Enterprises became the exclusive reseller of all of

Applied Watch Products in the continental United States and Hawaii.  Applied Watch failed to

honor the terms of the agreement, which caused Best Enterprises substantial monetary damages.

In addition, Hines and Applied Watch tortiously interfered with Best Enterprises' business

relationship with Phil Lach, an important sales representative for Best Enterprises, and other

prospective customers of Best Enterprises.  Because of Hines and Applied Watch's tortious

interference with the business relationship and expectancy, Best Enterprises lost the services of Phil Lach and suffered other substantial damages.

## Parties and Others

2.     Plaintiff, Best Enterprises, is a Minnesota limited liability company with its principal place of business located at 6989 N. 55th Street, Suite D, Oakdale, Minnesota 55128. The fourteen members of Best Enterprises are: (1) Thomas A. Best, a citizen of the State of Minnesota; (2) Steven M. Best, a citizen of the State of Georgia; (3) Jonathan Best, a citizen of the State of Minnesota; (4) Nathan Best, a citizen of the State of Minnesota; (5) Christa Best, a citizen of the State of Minnesota; (6) Julie A. Best, a citizen of the State of Wisconsin; (7) Cynthia J. Malone, a citizen of the State of Florida; (8) Nicholas Best, a citizen of the State of Georgia; (9) Hunter Moegenburg, a citizen of the State of Wisconsin; (10) Katelyn Malone, a citizen of the State of Florida; (11) Annika Best, a citizen of the State of Georgia; (12) Nicholas Best, a citizen of the State of Georgia; (13) Megan Malone, a citizen of the State of Florida; and (14) David Malone, a citizen of the State of Wisconsin.

3.     Defendant Applied Watch is an Illinois limited liability company with its principal place of business located at 1095 Pingree Road, Suite 213, Crystal Lake. Illinois. Applied Watch is in the business of, *inter alia*, offering management platforms for open source computer security applications.  Hines is the sole member of Applied Watch and is a citizen of the State of Illinois.

4.     Defendant Hines was at all time pertinent hereto the CEO, Chairman and President of Applied Watch.

5.     Phil Lach was a sales representative for Best Enterprises.

**Jurisdiction And Venue**

6.      There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.   Accordingly, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a).

7.      Venue in this district is appropriate pursuant to 28 U.S.C. §1391(a).

**Allegations Common To All Counts**

**A.      Best Enterprises and Applied Watch Enter Into the Reseller Agreement.**

8.      Best Enterprises is a family owned, Service-Disabled Veteran Owned Small Business.  For over sixteen years, Best Enterprises has provided communications contractors in the commercial and government sector with all the materials and technical help required to select and install data, voice, telecom and security systems. As part of its business, Best Enterprises acts as a distributor, offering a broad line of many of the leading manufacturers' highest quality products.

9.      On or about May 1, 2006, Best Enterprises and Applied Watch entered into a Reseller Agreement ("Reseller Agreement").   Applied Watch, *inter alia*, offers management platforms for open source computer security applications.    (A true and correct copy of the Reseller Agreement is attached hereto as Exhibit "A" and incorporated herein.)

10.     The Reseller Agreement, which was solely drafted by Applied Watch, granted Best Enterprises the exclusive right within the continental United States and Hawaii to resell the Applied Watch Command Center™.   (Ex A, p. 1, ¶ 1.1; p. 10-11.)   The Applied Watch Command Center™ is a management platform for open source security applications.   Best Enterprises also had the right to sell all other Applied Watch Products on a non-exclusive basis. (Ex. A, p.11.)

11.     The original term of the Reseller Agreement was for one year, commencing on May 1, 2006.

12.     Pursuant to Section 5.1 of the Reseller Agreement, Best Enterprises and Applied Watch agreed that Best Enterprises was entitled to the following gross profit margins on all Applied Watch products: equipment – 40%; software – 45%; TAPS[1] – 20%; installation – 100%; and annual subscriptions – 25%.

**B.     The First Amendment to the Reseller Agreement.**

13.     In or around October of 2006, Applied Watch desired to extend the term of the Reseller Agreement. Furthermore, Applied Watch also desired to amend the Reseller Agreement to make Best Enterprises the exclusive reseller of all Applied Watch products, not just the Applied Watch Command Center™.

14.     By e-mail dated October 24, 2006, Hines confirmed that he wanted Best Enterprises to be the exclusive reseller of all Applied Watch products. (A true and correct copy of the October 24, 2006 e-mail is attached as Exhibit "B" and incorporated herein.)

15.     In that e-mail, Hines stated his intention to have Best Enterprises "take[] over all of [Applied Watch's] sales efforts." *Id*. This would allow Applied Watch "to focus on what [it] does best, which is [its] technology." *Id*.

16.     In order to effectuate this, on or about November 1, 2006, Best Enterprises and Applied Watch entered into the First Amendment to the Reseller Agreement ("First Amendment"). (A true and correct copy of the First Amendment is attached hereto as Exhibit "C" and incorporated herein.)

---

[1] TAP stands for "Total Access Port," which is a device that allows a computer system to interface with the Applied Watch software.

17. The First Amendment extended the term of the Reseller Agreement through December 31, 2007. (Ex. C, ¶ 2.)

18. Furthermore, the First Amendment provided that Best Enterprises "is appointed as an exclusive, independent Reseller of Applied Watch Products" in the continental United States and Hawaii. (Ex. C., ¶ 3.)

19. As part of this exclusive relationship, Best Enterprises was "responsible for all sales and marketing related activities for Applied Watch Products in [the continental United States and Hawaii], including but not limited to:

- Pursuing all sales leads. Applied Watch agrees that it shall cause all sales leads to be forwarded to Best in order that Best may pursue such leads.

- Any pricing inquiries will be forwarded to Best for follow up.

- All quotes (whether from Best or from Applied Watch in the event of a quote to a preexisting customer) will be presented to customers on Best letterhead or through other appropriate Best channels (e.g. e-mail).

- All customer orders will be placed with Best. Best will then deliver a purchase order to Applied Watch in accordance with the Agreement, as amended.

- In the event an order is placed directly with Applied Watch, such orders shall be forwarded to Best for processing in accordance with the Agreement, as amended."

(Ex. C, p. 3.)

20. The First Amendment also provides that "the parties agree that the pricing and margins for the Applied Watch Products and the installation work performed in accordance with Paragraph 4 of this First Amendment shall be as set forth on **Exhibit B** attached to this First Amendment." (Ex. C, ¶ 4.)

21. Exhibit B to the First Amendment defines "gross profit margin" as "the value received by Best from customers purchasing Applied Watch Products which exceeds the cost of Applied Watch Products paid by Best to Applied Watch." (Ex. C, p. 4.) Under the terms of the

First Amendment, Best Enterprises was entitled to the same gross profit margins as under the original Reseller Agreement: equipment – 40%; software – 45%; taps – 20%; installation – 100%; and annual subscriptions – 25%.

22.     The only narrow exception to Best Enterprises' exclusive right to sell Applied Watch Products was for customer relationships that existed between Applied Watch and a customer as of the November 1, 2006 date of the First Amendment.  (Ex. C, p. 3.)  A full and complete list of these existing relationships is attached as Exhibit B to the First Amendment. Best Enterprises was not entitled to any gross profit margin with respect to the existing relationships specified in Exhibit B to the First Amendment.

**C.     Applied Watch's Breach of the Reseller Agreement and First Amendment.**

23.     After the execution of the Reseller Agreement, Best Enterprises worked diligently and in a good faith effort to generate sales of Applied Watch's products.  Best Enterprises expended large amounts of money and resources in its efforts on behalf of Applied Watch, which entailed spending large amounts of time on the telephone and traveling in person to industry conventions to meet prospective customers of Applied Watch products.

24.     From the very date of the Reseller Agreement, however, Applied Watch made no effort to honor the terms of the parties' contract.  Throughout the parties' relationship, Applied Watch failed to make payments that were owing to Best Enterprises, failed to cause all sales leads to be forwarded to Best Enterprises to pursue, placed customer orders itself instead of through Best Enterprises, and failed to forward to Best for processing orders that were placed directly with Applied Watch.  All of these actions were in breach of the parties' agreement.

25.     In addition, on or about March 27, 2007, Hines unilaterally declared that Best would no longer be the exclusive reseller of all Applied Watch products in the continental United

States and Hawaii. Instead, Hines informed Best that he was "narrowing [Bests'] exclusivity to the Midwest region." (A true and correct copy of the March 27, 2007 e-mail from Hines to Best is attached as Exhibit "D" and incorporated herein.) Hines' unilateral action was a breach of the parties' contract.

26.    Moreover, Buck Bundhund ("Bundhund"), an Applied Watch employee, sent an e-mail to Best on May 11, 2007. (A true and correct copy of the May 11, 2007 e-mail from Bundhund to Best is attached as Exhibit "E" and incorporated herein.) In that e-mail, Bundhund referenced six sales opportunities, only one of which was included on the list of existing customer relationships for which Best Enterprises was not entitled to any gross profit margin. *Id.* Despite this, Bundhund informed Best Enterprises that Applied Watch was not going to honor the commission percentages called for by the Reseller Agreement and First Amendment. *Id.* Instead of the commission percentages required by the parties contract, Applied Watch was, in some instances, going to reduce the commission to as low as only 10%. *Id.* To date, Applied Watch has not paid Best Enterprises any commissions for these sales, whether the full amount called for by the parties' agreement, or the lower amount contained in the May 11, 2007 e-mail.

27.    Furthermore, the May 11, 2007 e-mail also makes clear that Applied Watch breached the Reseller Agreement and First Amendment by not forwarding on to Best all sales leads. For example, Bundhund states that Best Enterprises should only get a 10% commission on the deal with Dillards because it is "a Applied Watch generated deal." *Id.* However, Dillards is not included on the list of Applied Watch's existing customer relationships, and should therefore have been forwarded on to Best Enterprises pursuant to the parties' agreement. (*See* Ex. C, p. 3.)

28.    On information and belief, Applied Watch failed to forward to Best Enterprises numerous other sales leads as required by the contract.  Applied Watch purposely did not forward on these leads in order to avoid paying Best Enterprises the commissions that were due under the parties' agreement.  By purposely not forwarding on these sales leads, Applied Watch acted in a willful and malicious manner.

**B.    Hines' Tortious Interference With Best Enterprises' Business Relationship With Lach and Other Business Expectancies.**

29.    In April of 2005, Best Enterprises entered into a business relationship with Phil Lach ("Lach") pursuant to which Lach became a sales representative for Best Enterprises and was paid a percentage of the sales opportunities he consummated.

30.    After the Reseller Agreement was executed, Lach became Best Enterprises' primary sales representative in the promotion and sale of Applied Watch products.  On or about November 1, 2006, Lach and Best Enterprises agreed that Lach's work for Best Enterprises would from that point forward focus exclusively on the promotion and sale of Applied Watch products.

31.    In November of 2006, Hines, without the knowledge and/or approval of Best Enterprises, approached Lach and suggested to Lach that he should work directly with Applied Watch instead of with Best Enterprises.  Hines made this proposal in order to wrongly eliminate Best Enterprises from the transactions, and to thereby avoid having to pay Best Enterprises the amounts due under the parties' agreement.

32.    On March 27, 2007, Hines, believing that Lach would from that point forward be working for Applied Watch, sent an e-mail to Best Enterprises.  In that e-mail, Hines used the fact that Lach would purportedly no longer be working for Best Enterprises as a reason for

unilaterally attempting to change the terms of the still valid Reseller Agreement and First Amendment. (*See* Ex. D.)

33.     After Hines made duplicitous and misleading statements to Lach, the two had a falling out and Lach decided not to work for Hines.  As a result, Hines refused to allow Lach to work any longer for Best Enterprises in the promotion and sale of Applied Watch products.

34.     Because of Hines' and Applied Watch's unjustified and intentional interference with Best Enterprises' business relationship with Lach, and their intentional interference with Best Enterprises' business expectancies under the parties' agreement, Best Enterprises has suffered substantial monetary damages and lost business opportunities.

35.     On or about July 13, 2007, Applied Watch terminated the Reseller Agreement and First Amendment, pursuant to Section 10.1 of the Reseller Agreement.

## CLAIMS

## COUNT I
### (Breach of Contract Against Applied Watch)

36.     Best Enterprises realleges and incorporates by reference herein Paragraphs 1 through 35 of the Complaint as Paragraph 36 of Count I of the Complaint as though fully set forth herein.

37.     The parties, for good and valuable consideration, entered into a binding contract, specifically, the Reseller Agreement, as subsequently modified by the First Amendment.

38.     The Reseller Agreement clearly and unambiguously granted Best Enterprises the exclusive right within the continental United States and Hawaii to resell the Applied Watch Command Center™. Best Enterprises also had the right to sell all other Applied Watch Products on a non- exclusive basis.

39.    The First Amendment clearly and unambiguously expanded the scope of the Reseller Agreement by making Best Enterprises the exclusive seller of *all* Applied Watch products in the continental United States and Hawaii.

40.    Applied Watch breached the parties agreement by, *inter alia*: failing to make payments that were owing to Best Enterprises; failing to cause all sales leads to be forwarded to Best Enterprises to pursue; placing customer orders itself instead of through Best Enterprises; failing to forward to Best Enterprises for processing orders that were placed directly with Applied Watch; and failing to make Best Enterprises responsible for the installation of all Applied Watch products.

41.    Best Enterprises has performed or was at all times willing to perform all of its duties under the parties' agreement.

42.    Best Enterprises has been damaged in an amount in excess of $250,000.00, the benefit of its bargain, as a direct and proximate result of the Applied Watch's breaches of the parties' agreement.

WHEREFORE, Plaintiff, Best Enterprises, LLC, prays that this Court enter judgment in its favor and against Defendant, Applied Watch Technologies, LLC, for compensatory damages in an amount in excess of $250,000.00, plus prejudgment interest, costs and such other and further relief as this Court deems just and appropriate under the circumstances.

## COUNT II
### (Tortious Interference With Business Relationship – Against Hines and Applied Watch)

43.    Best Enterprises realleges and incorporates by reference herein Paragraphs 1 through 42 of the Complaint as Paragraph 43 of Count II as though fully set forth herein.

44.    Hines and Applied Watch intentionally interfered with Best Enterprises business relationship with Lach by attempting to solicit Lach away from Best Enterprises.  Hines' and

Applied Watch's improper purpose was to avoid the contractual obligations to Best Enterprises and to force Best Enterprises into modifying the Reseller Agreement, as modified by the First Amendment.

45.    As a direct and proximate result of Hines' and Applied Watch's intentional interference, Best Enterprises did not realize its expectations from its business relationship with Lach, and has been damaged in an amount to be proven at trial.

46.    The conduct of Hines and Applied Watch was willful or malicious. Thus, Best Enterprises is also entitled to an award of punitive damages against these Defendants.

WHEREFORE, Plaintiff, Best Enterprises, LLC, prays that this Court enter judgment in its favor and against Defendants, Applied Watch Technologies, LLC and Eric Hines, for compensatory damages in an amount in excess of $250,000.00, plus prejudgment interest, punitive damages in excess of $1,000,000.00, costs and such other and further relief as this Court deems just and appropriate under the circumstances.

### COUNT III
#### (Tortious Interference With Prospective Business Relationships – Against Hines and Applied Watch)

47.    Best Enterprises realleges and incorporates by reference herein Paragraphs 1 through 46 of the Complaint as Paragraphs 47 of Count III as though fully set forth herein.

48.    Hines and Applied Watch intentionally interfered with Best Enterprises prospective business relationships with customers pursuant to the terms of the parties' agreement. Hines and Applied Watch's improper purpose was to avoid the contractual obligations to Best Enterprises and to force Best Enterprises into modifying the Reseller Agreement, as modified by the First Amendment.

49.     As a direct and proximate result of Hines' and Applied Watch's intentional interference, Best Enterprises did not realize its expectations from its business relationships with Lach and Applied Watch, and has been damaged in an amount to be proven at trial.

50.     The conduct of Hines and Applied Watch was willful and malicious. Thus, Best Enterprises is also entitled to an award of punitive damages against these Defendants.

WHEREFORE, Plaintiff, Best Enterprises, LLC, prays that this Court enter judgment in its favor and against Defendants, Applied Watch Technologies, LLC and Eric Hines, for compensatory damages in an amount in excess of $250,000.00, plus prejudgment interest, punitive damages in excess of $1,000,000.00, costs and such other and further relief as this Court deems just and appropriate under the circumstances.

**COUNT IV**
**(Unjust Enrichment – Against Applied Watch)**

51.     Best Enterprises realleges and incorporates by reference herein Paragraphs 1 through 35 of the Complaint as Paragraph 41 of Count IV as though fully set forth herein.

52.     In the alternative, Best Enterprises conferred a benefit on Applied Watch that it would be inequitable for Applied Watch to retain.

53.     Best Enterprises expended significant resources, manpower and money in promoting the sale of Applied Watch's products. Applied Watch has received and will continue to receive the benefit of Best Enterprises' efforts through product sales that have been made, or will in the future come to fruition.

54.     Applied Watch terminated its agreement with Best Enterprises in order to retain the benefit of Best Enterprises' efforts without having to pay any recompense to Best Enterprises.

55.    Because of this, it would be inequitable for Applied Watch voluntarily to accept and retain these benefits without payment

WHEREFORE, Plaintiff, Best Enterprises, LLC, prays that this Court enter judgment in its favor and against Defendant, Applied Watch Technologies, LLC, for compensatory damages in an amount in excess of $250,000.00, plus prejudgment interest, costs and such other and further relief as this Court deems just and appropriate under the circumstances.

### Jury Demanded

Plaintiff, Best Enterprises, LLC, demands a trial by jury on all issues triable by a jury under Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

BEST ENTERPRISES, LLC


By:    s/ Garry L. Wills
       One of Its Attorneys


Anthony J. Carballo
Garry L. Wills
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel.: 312/360-6000
Fax: 312/360-6596

Dated: December 19, 2007

#1436699v1

13