# EXHIBIT A

Applied Watch Technologies, LLC ¡ 1095 Pingree Road ¡ Suite 213 ¡ Crystal Lake, IL 60014 ¡ Tel: (877) 262-7593 ¡ Fax: (877) 262-7593

## RESELLER AGREEMENT

This Reseller Agreement ("Agreement") is made this __1__ day of __May__, 2006 ("Effective Date"), by and between Applied Watch Technologies, LLC, an Illinois limited liability company with offices at 1095 Pingree Road, Suite 213, Crystal Lake, IL 60014 ("Applied Watch"), and Best Enterprises, LLC, a Minnesota LLC with offices at 6989 N. 55th Street, Suite D, Oakdale, MN 55128 ("Reseller").

### SECTION I: APPOINTMENT

1.1 APPOINTMENT. Applied Watch appoints Reseller and Reseller accepts appointment as an independent, exclusive Reseller to market, sell, lease and install Applied Watch products within the territory described in **Exhibit A** ("Territory").

1.2 PRODUCTS COVERED. Applied Watch products ("Applied Watch Products") means the products agreed to between the parties on the effective date of this Agreement, and described in **Exhibit B**, as the same may be changed and agreed to from time to time by the parties. Upon such agreement, the parties will each execute a revised **Exhibit B**.

1.3 SUB-RESELLERS. Reseller shall be liable for the acts and omissions of all Sub-resellers it appoints.

1.4 SALES OUTSIDE TERRITORY. Reseller shall in no way market, distribute, export, sell, lease or install Applied Watch Products outside the Territory without Applied Watch's prior written approval, which approval shall not be unreasonably withheld. Applied Watch will not provide any shipping with respect to any Purchase Orders ("P.O.s") issued by Reseller outside the Territory unless such P.O.s have been previously approved.

### SECTION II: OBLIGATIONS OF RESELLER

2.1 MARKETING AND PRODUCT SUPPORT. Reseller shall use reasonable efforts to market and sell Applied Watch Products in the Territory and shall comply with all reasonable policies, programs, and requirements regarding marketing and product support as may be communicated by Applied Watch to Reseller from time to time. Reseller shall not, without prior written authorization from Applied Watch, resell Applied Watch Products in a retail environment that includes any type of store, shop, or other similar physical premises into which customers or potential customers are invited for the purpose of purchasing or potentially purchasing any product from Reseller.

2.2 ADVERTISING. Reseller shall adhere to such advertising policies and programs as are communicated to Reseller by Applied Watch, provided such policies and programs have been mutually agreed upon in the event that such policies and programs result in an economic cost to Reseller.

2.3 RESELLER SHALL:

a. Supply Applied Watch with such data as Applied Watch requests regarding Reseller's sales to customers for Applied Watch's own reporting purposes;

b. Participate fully in Applied Watch campaigns to notify customers of any retrofit or recall of Applied Watch Products;

c. Use only Applied Watch-approved spare parts for any repair, servicing and maintenance

of Applied Watch Products it provides under warranty;

d. Comply with laws and regulations applicable to "used" or returned merchandise and never refurbish, place in inventory, or resell as "new" any Applied Watch Products returned to Reseller for post-sale repair; and

e. Instruct its customers on how to obtain replacement parts under warranty, including the use of Applied Watch's Return Merchandise Authorization ("RMA") procedures.

2.4 OBSERVANCE OF APPLIED WATCH POLICIES. Applied Watch will keep Reseller informed of Applied Watch's customer support policies and procedures, and Reseller agrees to follow such policies and procedures to resolve any customer support issues.

2.5 RESELLER'S WAREHOUSE. All Products shipped to Reseller shall be maintained in a Reseller facility and shall be insured against any damage or loss.

2.6 PERSONAL GUARANTY. Thomas Best, the President of Reseller, has agreed to a limited personal guaranty of payment obligations of Reseller under this Agreement, attached hereto as Exhibit C. Such guaranty shall be limited to amounts owed to Applied Watch under this Agreement for Applied Watch Products.

## SECTION III: OBLIGATIONS OF APPLIED WATCH

3.1 SUPPLY OF APPLIED WATCH PRODUCTS. Applied Watch shall endeavor to manufacture, assemble and ship Applied Watch Products to Reseller in a timely manner. Should shortages occur, Applied Watch may allocate its production as it deems appropriate, may delay or stop shipments, and may send partial shipments with prior notice.

3.2 MARKETING ASSISTANCE. Applied Watch will provide marketing support services and training programs to Reseller on a case-by-case basis for a pre-arranged fee.

## SECTION IV: ORDERING AND DELIVERY OF APPLIED WATCH PRODUCTS

4.1 PURCHASING. This Agreement with its terms and conditions, and those provided under the Applied Watch Consumer Products Limited Warranty (available upon request) applies to all P.O.s and other documents of purchase ("Orders") which Reseller may place with Applied Watch for Applied Watch Products during the term of this Agreement.

4.2 ORDERS.

a. Reseller may deliver a signed P.O. to Applied Watch by facsimile, mail or electronic mail. Applied Watch shall accept all P.O.s by (a) facsimile, mail or electronic mail, with a signed original notice of acknowledgment or (b) by commencement of performance by Applied Watch.

b. Each P.O. shall be deemed an offer by Reseller to purchase the Applied Watch Products listed therein and when accepted by Applied Watch shall constitute a contract in accordance with the terms and conditions of the P.O. and this Agreement. If a conflict arises between the two, this Agreement shall take precedence.

c. P.O.s submitted by Reseller pursuant to this Agreement shall include the quantity and type of Product(s) ordered, Applied Watch Product descriptions, Applied Watch Product specifications, shipment and invoice information and shipping instructions, Reseller's order number and the Agreement number.

    d.    Applied Watch shall not be obligated to accept any order from Reseller in an amount less than One Thousand United States dollars (US $1000.00).

**4.3    CHANGES TO ORDERS.**

    a.    No terms of any P.O.s (whether printed, stamped, typed, written, or sent by any electronic means), except those specifying the quantity and type of Applied Watch Product(s) ordered, shipment and invoice information and shipping instructions (if allowed by Applied Watch), shall be binding either on Applied Watch or Reseller if they contravene any term or condition of this Agreement, unless specifically accepted or approved in writing and signed by an appropriate senior manager or executive of Reseller and Applied Watch. A general or form acknowledgment of any such order or any communication with respect to such an order, or the making of deliveries with respect thereto, shall in no case be construed as an acceptance or approval of the type required by this paragraph.

    b.    Changes to Orders will only be accepted prior to the Order entering Applied Watch's manufacturing queue. Reseller may initiate such changes or additions to previously accepted Orders by submitting a modification of the Order to Applied Watch with appropriate reference to the original Order. Upon Applied Watch's written acceptance of the modification or addition, Applied Watch shall process the Order in accordance with the pricing terms and conditions of this Agreement.

**4.4**    **PRODUCTS.** Applied Watch will notify Reseller in the event that any Applied Watch Products are unavailable, need to be substituted or are discontinued. In addition, Applied Watch reserves the right to make changes and modifications in specifications, construction or design of the Applied Watch Products.

**4.5**    **SHIPPING.** Reseller is responsible for payment of all shipping and handling fees for delivery of Applied Watch Products. All deliveries of Applied Watch Products are FOB Applied Watch manufacturing facilities unless Applied Watch expressly states otherwise in its acceptance of the P.O.. Title and risk of loss shall pass from Applied Watch to Reseller or Reseller's customer at the point of delivery.

## SECTION V: DISCOUNTS AND PAYMENTS

**5.1**    **RESELLER'S PURCHASE PRICE.** Prices on Applied Watch Products shall be as agreed to by Reseller and Applied Watch from time to time.

**5.2**    **PRICE CHANGES. Provided Applied Watch has given thirty (30) days notice to Reseller,** Applied Watch may at any time change Applied Watch Product pricing or the Reseller's purchase price without liability, but any P.O.s accepted by Applied Watch before a price change takes effect shall be invoiced at the previous price.

**5.3**    **INVOICE AND PAYMENT TERMS.** Reseller's initial purchase of Applied Watch Products will be invoiced to Reseller as of the order shipment date and shall be paid for net thirty (30) day terms. For subsequent purchases of Applied Watch Products, Applied Watch will invoice Reseller as of order shipment date, and may require a security deposit before accepting any order. Reseller shall pay for Applied Watch Products in U.S. Dollars upon shipment to Reseller customer.

## SECTION VI: RETURNED MERCHANDISE

Applied Watch will accept returns for defective Applied Watch Products in accordance with

---

Applied Watch's Consumer Limited Warranty.

## SECTION VII: TRADEMARKS, TRADE NAMES

Reseller acknowledges that Applied Watch and/or its parent or affiliates are the sole and exclusive owners of the name "Applied Watch" and any abbreviations or variations thereof, and of any and all of Applied Watch's trademarks and trade names, service marks, trade logos and trade dress, whether registered or not (collectively "Trademarks") as Applied Watch may amend from time to time in its sole discretion. Reseller agrees not to register or use any mark(s) that are similar enough to be construed as Applied Watch Trademarks. Reseller acquires no rights to the Trademarks, and Reseller hereby assigns and transfers to Applied Watch all rights that it may acquire in and to the Trademarks, whether by operation of law or otherwise. Any approval for Reseller's use of any Applied Watch Trademark shall be made pursuant to an Applied Watch Trademark License Agreement executed separately by and between the Parties hereto.

## SECTION VIII: SOFTWARE

8.1   SOFTWARE AS COMPONENT. Applied Watch Products include as components certain software programs (collectively "Programs") proprietary to Applied Watch or licensed by it from third-party vendors, which may be periodically updated and substituted. Applied Watch has all rights necessary for it to market and distribute the Programs as Applied Watch Product components, as well as the right and authority to conclude this Agreement and to grant rights hereunder regarding the Programs. Title to the Programs remains with Applied Watch and/or its licensors, and Reseller has no rights to transfer them except as stated below.

8.2   DISTRIBUTION RIGHTS. Subject to the use license in Section 8.3 below, Applied Watch grants to Reseller during the Term a non-exclusive, non-transferable right to transfer to end users within the Territory the copies of the Programs it obtains under this Agreement only as components of Applied Watch Products, subject to the following terms and conditions:

   a.   Reseller shall sell or lease Applied Watch Products with the Program packages as integral parts, and shall abide by all terms and conditions imposed by the Programs' licensors. Reseller shall not open the Program packages or end user license packets or separate such Program packages (including documentation and end user licenses) from the Applied Watch Products. Reseller shall not copy or reproduce any Program (except as stated herein or in any Program's pre-packaged license agreement), nor modify, reverse engineer, disassemble, or de-compile any Program in any way.

   b.   Reseller shall promptly notify Applied Watch of any unauthorized use or copying of any Program.

   c.   Termination of this Agreement will automatically and immediately terminate Reseller's rights under this Section.

8.3   USE LICENSE Reseller shall pass on to end users of each Applied Watch Product a license to use the Programs in the form of a "break-the-seal" end user license agreement contained in the Programs' packages.

8.4   COMPLIANCE WITH IMPORT REGULATIONS. Reseller shall comply with all United States export control regulations, licensing or other requirements applicable to the Programs.

8.5   DISCLAIMER OF WARRANTIES AND LIMITATION OF LIABILITY. EXCEPT FOR THE EXPRESS WARRANTIES STATED IN THIS AGREEMENT OR IN ANY PRE-PACKAGED LICENSE AGREEMENT FOR AN APPLIED WATCH PRODUCT COMPONENT, APPLIED

WATCH (ON BEHALF OF ITSELF AND ITS LICENSORS) DISCLAIMS ALL OTHER REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE PROGRAMS, INCLUDING ALL IMPLIED CONDITIONS OR WARRANTIES OF NONINFRINGEMENT, MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. WITH RESPECT TO DEFECTS IN DISKETTES, COMPACT DISKS OR OTHER PHYSICAL MEDIA AND DOCUMENTATION, OPERATION OF THE PROGRAMS AND ANY APPLICATION OR USE OF THE PROGRAMS, IN NO WAY SHALL APPLIED WATCH (OR ITS LICENSORS) BE LIABLE FOR ANY LOSS OF PROFIT OR ANY OTHER COMMERCIAL DAMAGE, INCLUDING BUT NOT LIMITED TO SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR OTHER DAMAGES.

### SECTION IX: TERM

This Agreement's term ("Term") shall begin on the Effective Date and continue for one (1) year.

### SECTION X: TERMINATION

10.1    TERMINATION. By either party upon thirty (30) days' written notice.

10.2    EFFECT OF TERMINATION.

   a.    Upon termination of this Agreement, Applied Watch may terminate any or all orders which had not yet been accepted by Applied Watch by one of the two methods described in Section 4.2(a) of this Agreement.

   b.    Upon termination, Reseller shall immediately cease all marketing, promotion, advertising or reference to Applied Watch Products and shall have no further rights to use Applied Watch's marketing, promotion or advertising materials or other resources.

   c.    Termination will discharge and release Applied Watch from all obligations and liability under this Agreement, except as it expressly accepts for unfilled orders. The sole fact of this Agreement's termination shall not make either party liable to the other for any compensation, reimbursement, losses or damages whatsoever, though Reseller shall remain obligated to pay all outstanding balances on its Applied Watch Product purchases.

### SECTION XI: CONFIDENTIALITY

11.1    CONFIDENTIAL INFORMATION. Prior to and during the Term hereof, one party to this Agreement may convey to the other party proprietary and confidential information about the other party's services, strategy and analysis. Prior to and during the Term hereof this Agreement (including renewals) and for three (3) years thereafter, neither party shall disclose to any third party any such information marked CONFIDENTIAL, PROPRIETARY, PRIVATE or INTERNAL DATA, or which, though not so marked, could reasonably be construed as confidential or sensitive, such as the terms of this Agreement (all collectively "Confidential Information"), nor shall it use any such Confidential Information for its own benefit, except as provided herein. Any reliance on such Confidential Information is at such party's own risk. Nothing in this Section grants or implies any rights by license, estoppels, or otherwise. Confidential Information does not include information (i) in the public domain at the time of disclosure or which enters the public domain after such disclosure through no fault of either party, (ii) generally disclosed to third parties by either party without restriction, (iii) communicated to either party by a third party with the unrestricted right to do so, or (iv) approved for release by either party in writing.

11.2    PRESENTATIONS AND PLANNING. Applied Watch's oral and visual presentations

describing Applied Watch Products, business and product plans, and any inspections thereof by Reseller or its personnel shall all be deemed Confidential Information under this Agreement, whether so marked or not.

11.3 SOLICITATION OF EMPLOYEES. Reseller agrees that during the period of this Agreement and for one year (1) following termination of the Agreement, Reseller shall not solicit or accept if offered to it, with or without solicitation, on Reseller's own behalf or on behalf of any other person or entity, the services of any person who is a current employee of the Applied Watch (or was an employee of the Applied Watch during the year preceding such solicitation), nor solicit any of Applied Watch's current employees (or any individual who was an employee of Applied Watch during the year preceding such solicitation) to terminate employment with Applied Watch, nor agree to hire any current employee of Applied Watch (or any individual who was an employee of Applied Watch during the year preceding such solicitation) into employment with Reseller or any other person or entity.

## SECTION XII: EXPORT CONTROLS

12.1 COMPLIANCE WITH LAWS. Reseller shall comply with all United States export laws and regulations applicable to Applied Watch Products, and shall obtain any licenses required for export.

12.2 PRODUCTS OF U.S. ORIGIN TECHNOLOGY. Reseller may sell Applied Watch Products only to end users within the Territory, and shall not export any Applied Watch Products, including Programs, without Applied Watch's advance written approval and, if required, U.S. government permission. This requirement shall survive termination or expiration of this Agreement. Reseller shall sell Applied Watch Products to any person or firm identified by the U.S. government as being denied the right to receive any U.S. product.

## SECTION XIII: LIMITATION OF LIABILITY AND REMEDIES; INDEMNITY

13.1 LIMITATION OF LIABILITY. EXCEPT TO THE EXTENT OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY LOSS OF PROFITS, LOSS OF BUSINESS, LOSS OF USE OR DATA, INTERRUPTION OF BUSINESS, OR FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, EVEN IF THE PARTY SHALL HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM AGAINST THE OTHER BY ANY THIRD PARTY. THE LIMITATIONS OF LIABILITY SET FORTH HEREIN SHALL NOT APPLY TO DAMAGES ARISING FROM CLAIMS FOR WHICH RESELLER HAS AGREED TO INDEMNIFY APPLIED WATCH PURSUANT TO THE PROVISIONS OF THIS AGREEMENT OR ARISING FROM ANY INTENTIONAL BREACH OF RESELLER'S REPRESENTATIONS AND WARRANTIES UNDER THIS AGREEMENT.

13.2 INDEMNITY

    a. Except as otherwise stated herein, Reseller shall indemnify and hold harmless Applied Watch against any and all claims, legal actions, losses, damages, liabilities, costs and expenses asserted against, imposed upon or incurred by Applied Watch arising out of or relating to:

        I. any misrepresentation or breach of warranty or covenant by Reseller under this Agreement;

        II. any actual or alleged act or omission of Reseller in the course of its performance hereunder;

        III. death or injury to any person or damage to any property resulting from

any product or part:
    i.     not supplied by Applied Watch,
    ii.     supplied by Applied Watch but changed, modified, adapted or refitted without Applied Watch's written authorization,
    iii.     not in Applied Watch's standard inventory but purchased by Applied Watch at Reseller's direction, or
    iv.     manufactured to Reseller's design, as well as any claim of infringement arising from the use of any Applied Watch Product with any other product as a combination not furnished by Applied Watch.

b.     Applied Watch shall defend Reseller from all claims, suits, damages, costs, expenses or liabilities actually incurred by Reseller as a result of any such claim. If a Product or part thereof is held to constitute an infringement and its intended use is enjoined, Applied Watch shall at its option procure for Reseller the right to continue using the Product or part, replace it with a non-infringing Product or part, modify it to become non-infringing, or remove it and refund its purchase price (less depreciation and amortization). This Section does not apply to (a) any product or part not supplied by Applied Watch; (b) any Product or part supplied by Applied Watch which is changed, modified, adapted or refitted without Applied Watch's express written approval; (c) any Product or part not in Applied Watch's standard inventory but purchased by it at Reseller's direction; (d) any Product or part manufactured to Reseller's design or (e) any claim of infringement arising from the use of any Product in combination with any other product not furnished by Applied Watch. THIS INDEMNITY IS APPLIED WATCH'S SOLE LIABILITY AND RESELLER'S SOLE REMEDY FOR INFRINGEMENT OF ANY PATENT, COPYRIGHT, TRADEMARK, TRADE SECRET OR OTHER INTELLECTUAL PROPERTY RIGHT.

## SECTION XIV: WARRANTIES AND REPRESENTATIONS

Applied Watch warrants and represents that the Applied Watch Products shall be delivered with good title, free of any rightful third party claim of infringement of any patent, copyright, trademark, trade secret or other intellectual property right recognized or registered within the United States and its possessions.

Applied Watch Products are covered by Applied Watch's Consumer Limited Warranty as referenced in Section VI, on standard terms and conditions supplied with each Applied Watch Product shipped and which are incorporated herein by this reference. Should Reseller resell Applied Watch Products to any entity other than an end-user, and Applied Watch Products are further resold, the final end-user may not receive any Applied Watch warranty or technical support.

## SECTION XV: BUSINESS STANDARDS; PRODUCT SERVICE PROVISION

15.1     **CONFLICTS OF INTEREST.** Reseller confirms that it has revealed all information pertaining to possible conflicts of interest created by sale of competing products or services or arising from other positions or contracts held by Reseller and represents that no conflict of interest exists. Reseller shall disclose to Applied Watch any future circumstances which could create possible conflicts of interest as soon as they become known by Reseller. Without limiting the generality of the foregoing, Reseller shall inform Applied Watch of any business relationship, circumstance, or situation which could prejudice in any way the conduct of Applied Watch marketing activities according to the highest ethical and business standards or place Reseller or Applied Watch in any kind of disreputable or embarrassing situation.

15.2 **ETHICAL STANDARDS.** Directors, officers, or employees of Reseller shall not, directly or indirectly, offer, promise or pay any bribes or other improper payments for the purposes of promoting Applied Watch Product sales to any individual, corporation, government official or agency, or other entity. No gift, benefit or contribution in any way related to Applied Watch or the sale of Applied Watch Products shall be made to political or public officials or candidates for public office or to political organizations, regardless of whether such contributions are permitted by local laws. Reseller shall generally abide by all Applied Watch policies and standards regarding conflicts of interest and ethics as may be adopted by Applied Watch or otherwise communicated to Reseller from time to time, such policies and standards being incorporated herein by this reference.

15.3 **AUTHORIZED SERVICE PROVIDER PROGRAM.** In the event Reseller is approved by Applied Watch as an Authorized Service Provider for Applied Watch Products, Reseller shall at all times during the period of such designation adhere to the standard terms, conditions, rules and policies of the Applied Watch Authorized Service Provider Program as may be issued by Applied Watch from time to time, and shall be solely responsible for all its acts and omissions in the course of acting as an Authorized Service Provider for Applied Watch Products.

15.4 **SALES GOALS.** Applied Watch and Reseller agree to meet once every three calendar months to review performance and sales goals.

## SECTION XVI: FORCE MAJEURE

Applied Watch shall not be liable for any failure to perform due to causes beyond its control, including but not limited to fire, flood, earthquake, explosion, accident, acts of public enemy, war, rebellion, insurrection, sabotage, epidemic, quarantine, labor disputes or shortages, transportation embargoes, failures or delays, inability to secure raw materials or machinery, acts of God or government (including denials of or onerous restrictions on export licenses), any such event of force majeure affecting Applied Watch's third-party suppliers, or judicial action. Similar causes shall excuse Reseller for failure to take Applied Watch Products ordered by Reseller other than those already in transit or specially fabricated or not readily saleable to other buyers.

## SECTION XVII: GENERAL PROVISIONS

17.1 **PARTIES' RELATIONSHIP.** The relationship between the parties hereto is solely that of independent seller and buyer with the right to resell.

17.2 **GOVERNING LAW; VENUE.** This Agreement and any controversy arising out of or in relation to it shall be governed by the law of the State of Illinois (conflicts of laws provisions excepted) and, the parties hereby submit to the jurisdiction of the state and federal courts of the State of Illinois, which shall have exclusive jurisdiction over all controversies in connection herewith. Reseller hereby waives any right to assert any rights or defenses within any other jurisdiction or to require that litigation regarding this Agreement take place elsewhere.

17.3 **SEVERABILITY.** If any provision of this Agreement shall be declared void, invalid, or illegal, the validity or legality of all other provisions of the Agreement shall not be affected thereby.

17.4 **NOTICES.** Except as otherwise provided in this Agreement, all notices, demands and other communications hereunder shall be in writing and shall be delivered personally or sent by facsimile, other electronic means or nationally recognized overnight courier service addressed to the party to whom such notice or other communication is to be given or made at such party's address as set forth below, or to such other address as such party may designate in writing to the other party from time to time in accordance with the provisions hereof, and shall be deemed given when personally delivered, when sent electronically or one (1) business day after being sent by

overnight courier.

    If to Reseller:    Best Enterprises, LLC
                                6989 N. 55th Street
                                Suite D
                                Oakdale, MN 55128
                                USA

    If to Applied Watch:    Applied Watch Technologies, LLC
                                1095 Pingree Road
                                Suite 213
                                Crystal Lake, IL 60014
                                USA

EITHER PARTY MAY CHANGE THE ADDRESS TO WHICH NOTICE MUST BE SENT BY GIVING WRITTEN NOTICE OF SUCH CHANGE TO THE OTHER PARTY IN THE MANNER PROVIDED HEREIN.

17.5    **ASSIGNABILITY.** Neither party may assign or transfer this Agreement without the other party's advance written consent. Provided, however, that in the event Applied Watch is involved in an extraordinary transaction as defined on **Exhibit D**, Applied Watch may appoint another reseller in the Territory with respect to Applied Watch Products (other than the Applied Watch Command Center™) in accordance with **Exhibit D**.

17.6    **NO WAIVER.** Any failure of either party to enforce at any time, or for any period of time, any provision of this Agreement, shall not constitute a waiver of such provision or in any way affect the validity of this Agreement.

17.7    **COMPLETE AGREEMENT.** This Agreement with its Exhibits contains the parties' entire Agreement and supersedes all previous communications, representations or agreements, oral or written, regarding its subject matter. No addition to or modification hereof shall bind either party unless reduced to writing and duly executed by the parties as this Agreement was, subject, however, to revisions of **Exhibits A through D**, which Applied Watch may revise at any time pursuant to Section 17.8.

17.8    **EXHIBITS.** All Exhibits attached hereto are incorporated herein by this reference, and Applied Watch has the right to amend in writing any of those Exhibits in its sole discretion.

IN WITNESS WHEREOF, this Agreement has been executed by the parties' authorized representatives on the date first written above.

| **Applied Watch Technologies, LLC** | **Reseller** |
|---|---|
| 1095 Pingree Road<br>Suite 213<br>Crystal Lake, IL 60014 | 6989 N. 55th Street<br>Suite D<br>Oakdale, MN 55128 |
| By: _[signature]_<br>Name: Eric Hines | By: _[signature]_<br>Name: THOMAS A BEST |
| Title: CEO, Chairman, President | Title: PRESIDENT |
| Date: 05-01-06 | Date: 5-01-06 |

---

Applied Watch Technologies                    Page 9 of 13
4/21/2006
Confidential

## EXHIBIT A

**APPLIED WATCH'S RESELLER TERRITORY LIST.** Reseller's Territories shall be defined as the Continental United States and Hawaii. Prior to any termination of this agreement, Applied Watch will send written notice to the Reseller.

## EXHIBIT B

**APPLIED WATCH PRODUCTS.** Reseller's exclusive right to resell Applied Watch Products within the Territory described in "Exhibit A" applies only to the Applied Watch Command Center™. Reseller may sell any other Applied Watch Products on a non-exclusive right basis. Additionally, at all times, Applied Watch reserves the right to sell any Applied Watch Products, including Applied Watch Command Center™, directly to its preexisting customers at any time without notice to Reseller.

**APPLIED WATCH PURCHASE ORDER FORM.** Reseller's standard purchase order will be sufficient to constitute an order, but no terms and conditions stated on Reseller's purchase order will have any effect on the terms of this Agreement and are superseded in their entirety by this Agreement.

## EXHIBIT C

### Personal Guarantee

## EXHIBIT D

**EXTRAORDINARY TRANSACTIONS.**